UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO BRANCH OF NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a Subdivision of the State, et al.,<br><br>Defendants. | Case No.: 16cv2575-JLS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>(ECF Nos. 22, 23) |

Presently before the Court is Defendants County of San Diego's and Sheriff William Gore's Motion to Dismiss Plaintiffs' First Amended Complaint ("County MTD"), (ECF No. 22), and Defendants City of El Cajon's and Jeff Davis's Motion to Dismiss First Amended Complaint and for a More Definite Statement ("City MTD"), (ECF No. 23). Also before the Court are Plaintiffs' Oppositions to the County Motion to Dismiss, ("County Opp'n"), (ECF No. 28), and the City Motion to Dismiss, ("City Opp'n"), (ECF No. 27), as well as the corresponding Replies ("County Reply"), (ECF No. 31); ("City Reply"), (ECF No. 30). The Court vacated the scheduled hearing and took the Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 34.) Having considered the Parties' arguments and the law, the Court rules as follows.

# BACKGROUND

Alfred Olango was an African American man who was unarmed when police shot and killed him on September 27, 2016. (Compl. ¶ 2.) The events here at issue occurred in the wake of Mr. Olango's death.

Approximately four days after Mr. Olango's death, community members held a vigil at the location of the shooting—the parking lot behind a restaurant, Los Panchos. (*Id.*) This parking lot is located in a privately owned shopping center. (*Id.*) Plaintiffs allege that Los Panchos granted Plaintiffs permission to be there. (*Id.*)

At this first vigil, approximately eighty members of the community gathered and created a memorial with tables, candles, photographs, signs, and a canopy. (*Id.* at 3.) Some members barbequed and offered free food to the community. (*Id.*) Some collected donations for Mr. Olango's family. (*Id.*) Plaintiffs allege that the vigil was quiet and peaceful at all times. (*Id.*)

Later that night, at approximately 12:00 a.m., a police helicopter informed the vigil attendees that the gathering had been declared an unlawful assembly. (*Id.* at 4.) Many vigil attendees left at that time, (*id.*), while others remained to speak with Sheriff's deputies who soon blocked both exits of the shopping center in which the parking lot was located, (*id.* at 5). After approximately thirty minutes of discussion between community members and the Sheriff's deputies, the deputies either dispersed the remaining vigil members or arrested the approximately twelve members who refused to leave. (*Id.* at 6.) Sheriff's deputies then tore down signs and posters at the vigil site. (*Id.* at 7.) Plaintiffs allege that at all times the "Sheriff's deputies could easily see and ascertain the peaceful nature of the vigil." (*Id.* at 8.)

Approximately two weeks later, at another vigil in the Los Panchos parking lot, the police again declared an unlawful assembly at approximately 12:00 a.m. (*Id.* at 9.) Defendants additionally asserted that Plaintiffs were trespassing. (*Id.*) Plaintiffs allege that at that time "[n]one of the [vigil attendees'] behavior could be called violent, boisterous, or tumultuous conduct . . . ." (*Id.*) Plaintiffs do not allege they had permission from Los

Panchos to be at the vigil site that night, nor do Plaintiffs allege that law enforcement could see and ascertain the peaceful nature of the vigil. (*Compare id.* ¶¶ 2–8, *with id.* ¶¶ 9–10.)

Since that time, Plaintiffs allege that the El Cajon Police are threatening to arrest for trespassing "any community members/protestors who go to the shopping center to visit the vigil site . . . ." (*Id.* at 11.) Three Plaintiffs, and approximately seven community members, have been arrested by El Cajon police officers for trespassing at the vigil location. (*Id.* at 12.) All Plaintiffs allege that they "would visit the vigil site to exercise their Constitutional Rights but for the threat of arrest by the Defendants . . . ." (*Id.* at 13.)

Plaintiffs initially filed suit in this Court seeking a temporary restraining order to enjoin law enforcement both from prohibiting peaceful gatherings at the vigil site and arresting community members for merely being present at the vigil site. (*See generally Ex Parte* Appl. for TRO ("TRO Appl."), ECF No. 4.) The Court held a hearing on the TRO Application and subsequently denied the Application. (ECF Nos. 12, 16.) Defendants have now moved to dismiss the underlying Complaint. (ECF Nos. 22, 23.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice
///

"if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

## ANALYSIS

Although the County Motion and City Motion at times assert overlapping arguments, they also each raise concerns specific to the distinct moving parties. Accordingly, the Court addresses each separately where relevant, turning first to the County Motion and then addressing the City Motion.[1]

**I.    The County Motion to Dismiss**

The County and Sheriff Gore argue both that they should be entirely dismissed from the action, and, in the alternative, that various individual claims warrant dismissal. (County

---

[1] The City also requests that the Court take judicial notice of several photographs depicting the location where the events here at issue took place. (Request for Judicial Notice, ECF No. 23-2.) Plaintiffs do not oppose the Request, and the Court finds that the general location where the events here at issue took place are objectively verifiable and therefore validly judicially noticed. *See* Fed. R. Evid. 201(b). Accordingly, the City's Request is **GRANTED**.

MTD 3–13.) However, because the Court concludes that the Complaint currently fails to allege sufficient facts to state any claim against either Defendant, the Court only addresses this threshold issue.

Turning first to Plaintiffs' sparse allegations against Sheriff Gore in his individual capacity—each allegation is either alleged on information and belief, merely a legal conclusion couched as a statement of fact, or some combination of the two. (Compl. ¶¶ 14 ("It is alleged on information and belief, that defendants Police Chief JEFF DAVIS and Sheriff WILLIAM GORE imposed an illegal and unwritten curfew on free speech activities . . . ."); 35 ("It is alleged on information and belief that either Sheriff WILLIAM GORE or officers directly subordinate to Sheriff Gore ordered the vigil to be dispersed despite its peaceful nature and in direct violation of the First Amendment rights of Plaintiffs and other members of the community. . . . . It is alleged that defendant WILLIAM GORE either directly ordered or acquiesced to the decision to declare the vigil an unlawful assembly or failed to properly train and supervise the deputies under his charge resulting in the violation of the Constitutional rights of the plaintiffs."); 118 ("This pattern and practice of illegal conduct, which included the excessive use of force by officers and the wrongful arrests of protestors, was approved and encouraged by policy makers such as Sheriff WILLIAM GORE and El Cajon Chief of Police JEFF DAVIS.").) This is insufficient to state a claim against Sheriff Gore in his personal capacity. *E.g.*, *Blantz v. Cali. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (conclusory, "on information and belief" allegations are insufficient to state a claim).

Nor do Plaintiffs' sparse allegations against the County (and Sheriff Gore in his official capacity) fare much better. (*E.g.*, *id.* ¶ 119 ("The Sheriff's Department has a pattern and practice of declaring peaceful assemblies unlawful based on their own convenience.").) For instance, although Plaintiffs allege that the Sheriff's department declared the October 1 and 15 vigils to be unlawful, (*e.g.*, *id.* ¶ 48, 49), these allegations are either directly undercut by earlier allegations, (*id.* ¶ 14 ("[O]n October 1, 2016, the members of the vigil were informed . . . that the police had declared the vigil an unlawful assembly."), or lack

sufficient specificity to be plausibly pled against the County, (*id.* ¶ 9 (stating only that "<u>the Defendants</u> declared an unlawful assembly" (emphasis added))). Accordingly, the only validly pled allegations center on the fact that "Sheriff Deputies tore down signs the demonstrators had placed on the property with the permission of the tenants[,]" (*id.* ¶ 66; *see also id.* ¶ 7), or arrested vigil attendees for refusing to disperse after the unlawful-assembly declaration, (*id.* ¶¶ 75, 78, 99, 103). But taking these allegations together—and even assuming that the Sheriff's Department twice declared an unlawful assembly—is nonetheless insufficient to state a claim for municipal liability.[2] *See, e.g.*, *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989) ("[A] single act of a non-policymaking employee cannot give rise to municipal liability." (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985))).

Given the foregoing, the Court **DISMISSES** from this action both the County of San Diego and Sheriff William Gore.

## II. The City Motion to Dismiss

The City and Chief Davis argue that each cause of action should be dismissed for various reasons and additionally adopt the County Motion to Dismiss' arguments. The Court addresses the issues presented in the following order: (A) whether Plaintiff NAACP has associational standing; (B) Plaintiffs' claim for declaratory relief; (C) the alleged First Amendment violations; (D) the alleged unlawful seizures, arrests, detentions, and imprisonments; (E) the City's liability; and (F) Defendants' request for a more definite statement.

### *A. The NAACP and Associational Standing*

Defendants argue that the NAACP is not a proper party to the action because it fails to allege any direct harm and does not meet the requirements to have "associational"

---

[2] Plaintiffs seemingly acknowledge this, citing solely to Complaint paragraph 118 in support of their half-page Opposition to the County's arguments for dismissal regarding municipal liability. (County Opp'n 1–2 ("[Defendants] admit paragraph 118 of the FAC alleges 'the wrongful arrests of protestors, was approved and encouraged by policy makers such as Sheriff WILLIAM GORE.' ").)

standing. (County MTD 13–17.) Plaintiff counters that the NAACP "is bringing its claim both with respect to its own free speech rights as an organization, as well as that of its members[,]" and argues that "[t]he organization has repeatedly been unable to hold assemblies at the vigil site due to Defendants' position that they can bar all expressive activity on the property." (County Opp'n 7–8.). However, the NAACP's alleged inability to hold assemblies appears nowhere in the Complaint, and thus the NAACP has not adequately alleged direct injury. (*See generally* Compl.; *see also* County Opp'n 7–8 (providing a citation only to Complaint paragraph twenty, which merely discusses the NAACP as a party generally).) Accordingly, the only question is whether the NAACP meets the requirements for associational standing. The Court finds that it does not.

*Hunt v. Washington State Apple Advertising Commission* establishes that

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. 333, 343, (1977). In the present case, the Complaint's paragraph twenty contains the sole references to the NAACP. That paragraph does not allege that any of the individual parties to the Complaint are NAACP members. Nor does the paragraph allege any actual attempts by NAACP members to "visit, pay homage and demand justice for the loss of life in the parking lot behind Los Panchos in El Cajon." (Compl. ¶ 20.) This is fatal to the first *Hunt* requirement; standing requires—among other things—a legally cognizable injury that is "actual or imminent, not 'conjectural' or 'hypothetical[]' . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Given the foregoing, the Court **DISMISSES** the NAACP from this action.[3]

---

[3] Additionally, even if Plaintiffs cure these pleading deficiencies it would still likely be improper for the NAACP to join in the second and sixth causes of action because both seek monetary relief. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("*Hunt* . . .

### B. *Declaratory Relief*

Plaintiffs seek three specific judicial declarations: (1) "that the action taken by police by declaring the vigil an unlawful assembly was illegal and unconstitutional[;]" (2) "that the destruction of the memorial was unlawful and unconstitutional[;]" and (3) "that the community is entitled to maintain its vigil at the location of the shooting of Alfred Olango without harassment or interference by police, unless there is a clear and imminent threat of violence." (Compl. ¶¶ 58–60.) Defendants assert that each request fails for either lack of ripeness, mootness, or being an incorrect statement of law. (City MTD 8–11.) The Court together addresses the first two requests, and then turns to the third request.

As a threshold matter, Plaintiffs must have standing to bring a declaratory judgment action. In relevant part, "a case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989)). Otherwise put, a claim for declaratory relief should be dismissed if the relevant plaintiffs "do not face a continuous, remediable harm that concretely affects their 'existing interests.' " *Id.* at 643 (quoting *Headwaters*, 893 F.2d at 1015).

In the present case, Plaintiffs' first two declaratory relief requests are not viable; the police have already taken the relevant actions, and Plaintiffs frame their requests as declarations that these past actions <u>were</u> unlawful. And even if the actions were, it would have little bearing on any future protests, which would each have to be evaluated anew for legal compliance at the time of the protest. *See Feldman v. Bomar*, 518 F.3d 637, 643 (9th

---

suggest[ed] that an association's action for damages running solely to its members would be barred for want of the association's standing to sue. . . . . The questions presented here are whether, in enacting the WARN Act, Congress intended to abrogate <u>this otherwise applicable standing limitation</u> so as to permit the union to sue for damages running to its workers . . . ." (emphasis added)).

8

Cir. 2008) (distinguishing environmental cases where agency action has already occurred because the specific course of action could thereafter be remedied "by limiting its future adverse effects" (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988))).

However, the third request stands on different footing. It seeks a declaration that Plaintiffs may maintain peaceful protests at the vigil site. The police actively dispute Plaintiffs' right to do so, (*see* Compl. ¶¶ 11–12; *see also generally, e.g.*, City MTD; County MTD), and have begun simply arresting people for lingering at the vigil site, (Compl. ¶ 12). And Plaintiffs allege that they all "would visit the vigil site to exercise their Constitutional Rights but for the threat of arrest by the Defendants . . . ." (Compl. ¶ 13.) This is sufficient to confer standing due to a claimed threat of prosecution. *See, e.g.*, *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("In evaluating the genuineness of a claimed threat of prosecution, we look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."); *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach [to First-Amendment–based standing] rather than requiring litigants to speak first and take their chances with the consequences."). Accordingly, the only remaining question is whether Plaintiffs' third declaratory relief request makes out a plausible claim for relief.

The crux of Plaintiffs' third request for declaratory relief is that Plaintiffs have a right to engage in expressive activity at the location of Mr. Olango's death because the location is a public forum under California law. (*See* City Opp'n 11–13.) But the California Supreme Court recently held that "to be a public forum under our state Constitution's liberty-of-speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment,

relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store's merchandise and advertising displays." *Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8*, 290 P.3d 1116, 1121 (Cal. 2012).[4] And, in stark contrast to the characteristics the *Ralphs* Court identified, Plaintiffs' vigils in the present case were held in a <u>parking lot</u> behind Los Panchos. (*See* Compl. ¶ 2.) Furthermore, Plaintiffs seek a declaration that they may maintain their vigil in that same parking lot, (*see id.* ¶ 60), and Plaintiffs' Complaint contains no allegations that the parking lot is designed or furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation. Without any such allegations, and after taking judicial notice of the Broadway Village Shopping Center, Plaintiffs' third declaratory relief request fails to state a plausible claim. *See, e.g.*, *Van v. Target Corp.*, 155 Cal. App. 4th 1375, 1391, (2007) ("We decline to extend the [public forum analysis] to the entrance and exit area of an individual retail establishment within a larger shopping center. Appellants' evidence concerning the public nature of certain shopping centers' common areas failed to raise a triable issue of fact as to whether apron and perimeter areas at the entrances and exits of respondents' stores served as a public forum.").

Given the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' first cause of action.

### *C. First Amendment Violations*

Plaintiffs assert First Amendment violations flowing from the fact that "[a]t all times relevant to this Complaint, [P]laintiffs were exercising their First Amendment rights to peacefully assemble and seek redress of their grievances." (Compl. ¶ 63.) The Complaint then narrows the relevant violations to (1) the unlawful assembly declarations and related dispersal requests and arrests, (*id.* ¶¶ 64–67), and (2) Plaintiffs' subsequent inability

///

---

[4] All of Plaintiffs' cited authority both pre-dates this rule statement and comes from intermediate appellate courts.

"for the members of the community to generate large crowds[,]" (*id.* ¶ 68). These claims, like most others in the Complaint, are based on 42 U.S.C. § 1983.

Section 1983 provides redress to "any person of the United States" who is "depriv[ed] of any rights, privileges or immunities secured by the Constitution" or federal law. When a Plaintiff asserts a Section 1983 claim based on the First Amendment, "a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). However, federal First Amendment rights do not apply with absolute force in a private shopping center; such a location is not classified as a "public forum." *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 80–81 (1980) (explaining how earlier cases had rejected absolute First Amendment rights in private shopping centers); *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 569 (1972) ("The argument is that such a center has sidewalks, streets, and parking areas which are functionally similar to facilities customarily provided by municipalities. It is then asserted that all members of the public, whether invited as customers or not, have the same right of free speech as they would have on the similar public facilities in the streets of a city or town. . . . <u>The argument reaches too far.</u> (emphasis added)). "Nor does property lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there." *Lloyd*, 407 U.S. at 569. Otherwise put, "[t]he essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center." *Id.*

In the present case, Plaintiffs do not dispute that the vigil location is a private shopping center. (Compl. ¶ 2.) Indeed, the location appears to be a block-long strip mall with centralized parking for several stores and restaurants. (*See generally* Request for

Judicial Notice Ex. 1.) Plaintiffs do not enjoy absolute First Amendment rights in such a location. *See, e.g.*, *Adderley v. State of Fla.*, 385 U.S. 39, 47–48 (1966) ("Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on . . . . We reject it again." (footnote omitted)). And to the extent Plaintiffs rely on the California Constitution, which provides more expansive rights to freedom of speech and petition, (County Opp'n 11–13), Plaintiffs have not demonstrated how a violation of the California Constitution can make out a claim under the Federal Constitution or federal law.

However, the Complaint contains a pleading distinction between the October 1 and October 15–16 incidents. Specifically, Plaintiffs allege that "[o]n Saturday, October 1, 2016, community members held a vigil on private land with permission of Los Panchos . . . ." (Compl. ¶ 2 (emphasis added).) And each individual Plaintiff alleges harm flowing from police action on that date, (*id.* ¶¶ 21–33), including "Sheriff's deputies t[ea]r[ing] down signs and posters at the vigil site," (*id.* ¶ 7). These allegations, tied with the allegation that on that date "[t]he vigil was quiet and peaceful at all times[,]" (*id.* ¶¶ 3, 8), sets forth a plausible First Amendment violation based on the unlawful assembly declaration, corresponding order to disperse, and subsequent removal of signs and posters from the vigil site.

Given the foregoing, the Court **DISMISSES** all of Plaintiffs' First Amendment claims except for those regarding the October 1, 2016 vigil.

### D. Unlawful Seizures, Arrests, Detentions, and Imprisonments

Defendants move to dismiss Plaintiffs' third, fourth, and fifth causes of action based on (i) *Heck v. Humphrey*, and determinations that the relevant officers (ii) had probable

///
///
///

cause to arrest and (iii) are afforded qualified immunity.[5] (City MTD 14–20.) The Court addresses each argument in turn.

### *(i)* Heck v. Humphrey

Defendants argue that *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), and its progeny require either dismissal of certain claims or entry of a stay because Plaintiffs are necessarily "challenging the legitimacy of the charges against them in their state criminal actions but have not alleged those state criminal cases have concluded." (County MTD 14–16.) However, *Heck* held only that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (emphasis added). By contrast, in the present case neither the Complaint nor Defendants indicate that criminal charges have even been filed—the Complaint alleges only various arrests. And even pursuant to the most generous reading of Supreme Court and Circuit precedent, mere arrest alone is insufficient to bar suit merely because the state could, theoretically, charge Plaintiffs. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." (emphasis added)).

Given the foregoing, the Court cannot at this time say that *Heck* and its progeny warrant dismissal of these claims or a stay of this action.

---

[5] The County also moves to dismiss the three children from the fourth cause of action because the children "assert the same exact claims in both the Second and Fourth Causes of Action." (County MTD 17.) The Court agrees. Although Plaintiffs points out that the children's mother "was subjected to a very specific threat" that distinguishes her claims under the second and fourth causes of action, (County Opp'n 8), as currently pled that has no bearing on any distinct violation of the children's constitutional rights. Accordingly, the Court **DISMISSES** the three children from Plaintiffs' fourth cause of action.

*(ii) Probable Cause*

Defendants assert that each claim in Plaintiffs' third, fourth, and fifth causes of action must be dismissed because the relevant officers in each instance had probable cause to arrest as a matter of law. (City MTD 16–19.) The Supreme Court has defined probable cause as "whether at that moment the facts and circumstances within the[] [officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the p[laintiff] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. United States*, 338 U.S. 160, 175–176 (1949), and *Henry v. United States*, 361 U.S. 98, 102 (1959)).

Because in the present case the relevant arrests encompass several different sets of circumstances—here grouped according to (a) the October 1 and October 15–16 protest arrests, and (b) the post-October 16 arrests due to alleged trespass—the inquiry differs as between them. The Court addresses the relevant sets of circumstances in turn.

(a) Protest Arrests; Unlawful Assembly

Defendants argue that the relevant officers had probable cause to arrest the protestors who remained at the vigil site after the unlawful assembly declarations. (City MTD 16–19.) Specifically, Defendants argue probable cause was supplied by California Penal Code section 409, which provides that "[e]very person remaining present at the place of any . . . unlawful assembly, after the same has been lawfully warned to disperse . . . is guilty of a misdemeanor." However, Plaintiffs have alleged that the protests were peaceful at all times, and that the officers "could easily see and ascertain the peaceful nature of the vigil." (*e.g.*, Compl. ¶ 8; *see id.* ¶ 9.) This means that the officers' determinations that the protests were unlawful assemblies, (i.e., "[w]henever two or more persons assemble together to do any unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner," California Penal Code section 407), were clearly incorrect. Taking Plaintiffs allegations as true—as the Court must on a motion to dismiss—these facts set forth a plausible claim that the

///

///

officers lacked probable cause to arrest pursuant to the unlawful assembly declarations.[6] The Court therefore declines to grant Defendants' Motions to Dismiss on these grounds.

(b) Post-October 16; Trespass

Defendants devote a paragraph to argument regarding why the relevant officers had probable cause to arrest the relevant Plaintiffs for visiting the vigil site after October 16. (County MTD 19.) This lone paragraph in turn contains only one citation to legal authority—the California jury instruction for "Trespass: Unlawfully Occupying Property." CALCRIM 2931.

However, this particular jury instruction draws its elements from California Penal Code § 602(m). *Id.* And section 602(m) requires "a 'nontransient, continuous type of possession[,]' " which includes "the specific 'inten[t] to remain permanently, or until ousted.' " *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 954 (9th Cir. 2010) (quoting *In re Catalano*, 623 P.2d 228, 234 n.8 (Cal. 1981); *People v. Wilkinson*, 56 Cal. Rptr. 261, 262 (Cal. App. 1967)). In the present case, there are no allegations that the Plaintiffs who were arrested for trespassing intended to remain at the vigil site permanently. Accordingly, and in the absence of contrary authority, Defendants' argument here fails.

/ / /

/ / /

/ / /

---

[6] Defendants' citations to two 1939 cases do not convince the Court otherwise. (City MTD 17.) Both cases upheld arrests where the defendants physically assaulted the officers, threw rocks, and attempted to overturn automobiles. *E.g.*, *People v. Yuen*, 32 Cal. App. 2d 151, 155 (1939) ("Witnesses, including the sheriff, testified they saw the hood of the car raised, and saw Yuen at that time throw water on the motor, and saw Vassion throw a rock through the windshield, striking one of the occupants. Others saw Zderich throw rocks at the officers."); *People v. Spear*, 32 Cal. App. 2d 165, 168 (1939) ("The courts will not tolerate physical violence, or threats of violence, physical intimidation or misrepresentation of the facts, and where these exist they must be unhesitatingly enjoined."). Further, Plaintiffs in this case are exemplifying the conduct the City asserts to be proper in their Motion to Dismiss: that "it is the duty of a citizen to obey the commands of a peace officer given in his line of duty, and if the officer exceeds his authority, to have recourse to the courts rather than open to resistance." (City MTD 17.) Plaintiffs protested nonviolently, succumbed to arrest, and are now challenging the legal validity of the police officer's actions during the relevant events.

### *(iii) Qualified Immunity*

Defendants argue that, on the same facts as presented in the probable cause analysis, the officers are shielded under the doctrine of qualified immunity. (City MTD 19–21.) Specifically, "[i]n the context of an unlawful arrest . . . the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is <u>reasonably arguable</u> that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007)). However, as just discussed, Plaintiffs have alleged that the peaceful nature of the protest was and should have been clear to the relevant officers, therefore making the declarations of unlawful assembly objectively unreasonable. *Supra* Section II.D.ii.a. And Defendants' citation to section 602(m) as justification for the trespassing arrests is belied by California case law running back to at least 1967. *Wilkinson*, 56 Cal. Rptr. at 262. Accordingly, at least within the context of these Motions to Dismiss, the Court cannot say that the officers were shielded by qualified immunity.

### *E. City Liability*

Defendants argue that Plaintiffs have not adequately pled a theory of municipal liability regarding the City of El Cajon or Police Chief Jeff Davis. (City MTD 21–23.) As in Section II.D, *supra*, analysis here varies as between the unlawful assembly declarations and the post-October 16 trespassing arrests. Accordingly, the Court addresses each on its own terms.

A municipality may be held liable in limited circumstances. Specifically,

> [t]he Supreme Court has held that municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." . . . . A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the

standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citations removed).

In the present case, regarding the unlawful assembly declarations, Plaintiffs argue that they satisfy the second prong "if Police Chief JEFF DAVIS on his own, or in concert with Sheriff WILLIAM GORE, ordered the declaration of unlawful assemblies for reasons other than an imminent threat of widespread violence or harm." (Opp'n 23 (emphasis added).) But Plaintiffs' only support for this "if" are the Complaint's conclusory allegations regarding Chief Davis's and Sheriff Gore's motives, (Compl. ¶¶ 14, 118, 121), and the fact that law enforcement declared two separate assemblies to be unlawful at approximately midnight, (Compl. ¶¶ 2–6, 8–11; 48–49). This is insufficient to establish liability under the second prong. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1237 (9th Cir. 1999) ("[T]his court has refused to hold that the Los Angeles chief of police had delegated final policymaking authority to rank-and-file police officers.").

Nor do the trespassing arrests fare any better. Plaintiffs argue that "[c]learly[] someone, likely JEFF DAVIS[,] ordered El Cajon Police officers to arrest anyone who came to the Broadway Village Shopping Center to visit the vigil site." (Opp'n 23.) But, as above, this conclusion is supported only by the Complaint's conclusory allegations regarding the City of El Cajon and Chief Davis's motives, (Compl. ¶ 16), and the fact that "the El Cajon Police began arresting people for trespassing at the Broadway Village Shopping Center" in a total amount of "7 community members on October 17, 2016[,]" (*id.* ¶ 12). And, as above, this is insufficient to establish liability under the second prong.

Given the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss regarding Plaintiffs' sixth cause of action.

/ / /

/ / /

17

16cv2575-JLS (BGS)

### *F. Request for a More Definite Statement*

Additionally—to the extent the Court does not dismiss Plaintiffs' Complaint with prejudice—Defendants move for Plaintiffs to be required to prepare a more definite statement of the particular Defendants against which Plaintiffs assert each of their claims. (City MTD 23–25.) Specifically, Federal Rule of Civil Procedure 12(e) provides that:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

However, in the present case Defendants' sole citation to binding authority does not support their request for relief. Specifically, *McHenry v. Renne* dealt with a complaint that was "fifty-three pages long, and mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way . . . ." 84 F.3d 1172, 1174, 1178 (9th Cir. 1996) ("Despite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."). *McHenry* therefore bears little resemblance to the Complaint presently before the Court, which individually labels each cause of action and the relevant Plaintiffs and Defendants tied to each. Furthermore, given the balance of the Court's ruling in this Order, Plaintiff will almost certainly amend the operative Complaint, thus making Defendants' current request for a more definite statement largely moot. Accordingly, the Court **DENIES** Defendants' Motion for More Definite Statement. However, Defendants' may again raise the Motion—if warranted—when Plaintiffs amend their Complaint.

### CONCLUSION

Given the foregoing, the Court **GRANTS IN PART** Defendants' Motions to Dismiss and **DISMISSES**: (1) Sheriff Gore and the County of San Diego from this action; (2) Plaintiff NAAACP from this action; (3) Plaintiffs' First Cause of Action; (4) Plaintiffs'

Second Cause of Action except for those claims relating to the October 1, 2016 vigil; (5) Plaintiffs' Fourth Cause of Action regarding the three children; and (6) Plaintiffs' Sixth Cause of Action. Defendants' Motions to Dismiss are otherwise **DENIED**. Plaintiffs are granted **LEAVE TO AMEND** their Complaint. Plaintiffs **SHALL** file any such amendment <u>on or before fourteen days of the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: June 6, 2017

Hon. Janis L. Sammartino
United States District Judge