UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO BRANCH OF NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a Subdivision of the State, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 16-CV-2575-JLS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>(ECF Nos. 44, 45) |

Presently before the Court are two Motions to Dismiss: (1) County of San Diego and Sheriff Gore's Motion to Dismiss Second Amended Complaint, ("County MTD," ECF No. 44); and City of El Cajon and Jeff Davis's Motion to Dismiss Second Amended Complaint, ("City MTD," ECF No. 45).[1] Plaintiffs have filed Oppositions to both Motions, ("County Opp'n," ECF No. 61; "City Opp'n," ECF No. 62). Defendants each filed Replies in support of their Motions, ("County Reply," ECF No. 65; "City Reply," ECF No. 64). The Court rules as follows.

## BACKGROUND

On September 27, 2016, Alfred Olango, an unarmed African American man, was

---

[1] City of El Cajon and Jeff Davis have also filed a notice of joinder to the County of San Diego and Sheriff Gore's Motion. (ECF No. 46.)

shot and killed by an El Cajon police officer. ("SAC," ECF No. 37, ¶ 1.) This occurred at a shopping center parking lot behind a restaurant, Los Panchos, at what is commonly known as Broadway Village Shopping Center. (*Id.* ¶ 1.) In protest and in the wake of Mr. Olango's death, Plaintiffs and others participated in marches, protests, and rallies that lasted for weeks after the shooting. (*Id.* ¶ 4.) On September 30, 2016, a protest march was held. At approximately midnight, the march was declared to be an unlawful assembly and the protestors were ordered to disperse by members of the San Diego Sheriff's Department and the El Cajon Police Department, who were dressed in riot gear. (*Id.* ¶ 5.) Plaintiffs state there was "no threat of violence" at the protest but they dispersed without arrest. (*Id.*)

On October 1, 2016, community members held a vigil on private land being used "with permission" of Los Panchos. (*Id.* ¶ 6.) At this vigil, approximately eighty members of the community gathered and created a memorial with tables, candles, photographs, signs, and a canopy. (*Id.*) Some members barbequed and offered free food to the community. (*Id.*) Some collected donations for Mr. Olango's family. (*Id.*) Plaintiffs allege that the vigil was quiet and peaceful. (*Id.*)

At approximately midnight, a helicopter flew overhead, informing the members the gathering was unlawful and ordering them to disperse. (*Id.* ¶ 7.) Many members dispersed. Shortly afterwards, Sheriff's deputies, wearing helmets, bullet-proof vests, and carrying batons, blocked two exits of the shopping center. (*Id.* ¶ 8.) Some community members, including some Plaintiffs, spoke with the deputies "to convince them of their lawful right to continue the vigil." (*Id.*) The deputies would not let the vigil continue unless only a handful of people remained. (*Id.*) At approximately 12:30 a.m., the deputies advanced on the vigil, dispersing the participants, including Plaintiffs. (*Id.* ¶ 9.) Plaintiffs allege that at all times the "Sheriff's deputies could easily see and ascertain the peaceful nature of the vigil." (*Id.* ¶ 10.) Approximately twelve people refused to leave and were arrested for failure to disperse from an unlawful assembly. (*Id.* ¶ 9.)

On October 15, 2016, at another vigil at the vigil site, the police again declared an unlawful assembly at approximately 12:00 a.m. (*Id.* ¶ 11.) Defendants additionally

asserted that Plaintiffs were trespassing. (*Id.*) Plaintiffs allege that at that time "[n]one of the [vigil attendees'] behavior could be called violent, boisterous, or tumultuous conduct." (*Id.*)

On October 16, 2016 and continuing to the present, Plaintiffs allege the City of El Cajon and its Police Chief "have threatened to arrest any community members/protestors who go to the shopping center to visit the vigil site, despite the property being open to the public." (*Id.* ¶ 13.) Plaintiffs allege on information and belief the Police threaten to arrest anyone who does not go into a store in the shopping center and obtain a receipt, and have threatened to arrest Plaintiffs who visit the vigil site after purchasing items. (*Id.*)

On October 17, 2016, the El Cajon Police arrested seven community members, including three Plaintiffs, at the vigil site for trespassing and/or unlawful assembly, and arrested another Plaintiff when he was standing on the sidewalk. (*Id.* ¶¶ 14–15.)

This action was brought by the San Diego NAACP and named Plaintiffs against the County of San Diego and Sheriff William Gore (hereinafter, "County Defendants") and against the City of El Cajon and Police Chief Jeff Davis (hereinafter, "City Defendants"). Both sets of Defendants brought previous motions to dismiss the Complaint, which the Court granted in part and denied in part. ("Prior MTD Order," ECF No. 36.) Plaintiffs then filed a Second Amended Complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

## ANALYSIS

The Court will first address County Defendants' Motion to Dismiss. Within this Motion, the Court first analyzes the causes of action brought under 42 U.S.C. § 1983, first against Sheriff Gore and second against the County of San Diego. The Court then analyzes the cause of action brought under the Bane Act. The Court will next address City Defendants' Motion to Dismiss. Within this Motion, the Court first analyzes the causes of action brought under 42 U.S.C. § 1983, first against Chief Davis and then against the City of El Cajon. The Court then analyzes the Bane Act cause of action, then the request for declaratory relief, and finally the argument for qualified immunity.

# COUNTY DEFENDANTS' MOTION TO DISMISS

## I. Section 1983 Claims Against Sheriff Gore (First Through Fourth Causes of Action)

County Defendants seeks to dismiss the SAC against Sheriff Gore on all claims against him in both his personal and official capacity. (County MTD 9.)[2] The Court previously dismissed all claims against Sheriff Gore. (Prior MTD Order 6.) In the SAC, Plaintiffs allege five causes of action against Sheriff Gore, four of which arise under § 1983.

Plaintiffs state the SAC brings claims against Sheriff Gore both in his personal and official capacity. (County Opp'n 15.) Personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law" and official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations omitted). The Court does not make the determination at this stage as to which capacity of Sheriff Gore is asserted in each specific claim but analyzes the causes of action as alleged against Sheriff Gore in his personal capacity.[3]

### A. *Section 1983 Legal Standard*

Section 1983 requires a claimant to prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of

---

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

[3] "In many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky*, 473 U.S. at 167 n.14 (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). Plaintiffs are to specify the capacity under which they are suing the defendant in further pleadings. If Plaintiffs bring allegations against Sheriff Gore in his official capacity and against the County, and the two are duplicative, the claims against Sheriff Gore will be dismissed. *See Rivera v. Cnty. of San Bernardino*, CV 16-795 PSG (KSx), 2017 WL 5643153, at *3 n.2 (C.D. Cal. Mar. 8, 2017) (dismissing with prejudice claims against Sheriff Gore in his official capacity as duplicative of those against the County); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed."). The same applies to Chief Davis, *see infra* City Defendants' Motion to Dismiss.

some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).[4] Under section 1983, supervisory officials are not liable for actions of subordinates through vicarious liability. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Further, "[a] supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. Yet, this does not prevent a supervisor from being held liable in his individual capacity." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). A defendant may be liable as a supervisor "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen*, 885 F.2d at 646). Thus, supervisory liability "exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen*, 885 F.2d at 646 (internal quotation marks omitted). Plaintiffs have not alleged Sheriff Gore was personally involved in the deprivation of their rights, rather, they proceed under the latter form of supervisorial liability. Plaintiffs' § 1983 claims against Sheriff Gore allege violations of both their First and Fourth Amendment rights—Causes of Action One through Four.

### B. First and Second Causes of Action: Section 1983 Claims Pursuant to the First Amendment

The SAC alleges Sheriff Gore is the sheriff for the County of San Diego, and, that on information and belief, he or officers directly subordinate to him "ordered the vigil to be dispersed despite its peaceful nature and in direct violation of the First Amendment

---

[4] In the present Motion to Dismiss, all Defendants focus on the liability of the individuals and the municipalities rather than whether the underlying alleged acts violated Plaintiffs' constitutional rights. The Court will do the same in this Order, but notes that all Defendants are to address any opposition they have to the alleged constitutional violations in further pleadings.

rights of Plaintiffs." (SAC ¶ 45). Plaintiffs allege this occurred at the September 30, 2016 vigil (first cause of action) and the October 1–2, 2016 vigil (second cause of action). Plaintiffs allege Sheriff Gore is responsible for ensuring the actions of County law enforcement officials are consistent with the laws and Constitution, and, on information and belief, Sheriff Gore "either directly ordered or acquiesced to the decision to declare the vigil an unlawful assembly or failed to properly train and supervise the deputies under his charge resulting in the violation of the Constitutional rights of the plaintiffs." (*Id.*) Plaintiffs state, according to "a noted expert in law enforcement procedures, the decision to declare a protest or assembly to be unlawful at a given time, such as midnight, would come from the very highest levels of law enforcement—and likely came from" Sheriff Gore. (*Id.* ¶ 153.)

County Defendants move to dismiss the § 1983 claims against Sheriff Gore because the assertion that Sheriff Gore imposed a curfew on free speech activities is only a "naked assertion" and the allegations against him are based on information and belief. (County MTD 10.) In response, Plaintiffs argue the allegations in the SAC show it is likely that "Sheriff Gore had personal knowledge of the large mobilization of his department, and the orders to declare the vigils unlawful assemblies" and the Sheriff's Department's actions "could not plausibly have been carried out without [Gore's] knowledge and consent, if not direct order." (County Opp'n 11.)

"The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal quotations omitted) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."). It is true that Plaintiffs have not pled any facts that concretely link the alleged policies to Sheriff Gore. But, Plaintiffs have alleged that even though the assembly

was lawful and there was no violence or threat of violence, Defendants declared it unlawful and ordered the participants to disperse, each time at midnight. (SAC ¶¶ 63–64.) Plaintiffs allege "the only logical explanation [for this] is that Defendants planned to shut down the protest at a predetermined time and/or place." (*Id.* ¶ 64.) Plaintiffs state Defendants are in possession of facts behind any policies implemented by Sheriff Gore. (County Opp'n 10.) The Court finds these allegations sufficient at this stage to allow Plaintiffs' Complaint to move forward. Thus, the Court **DENIES** County Defendants' Motion to Dismiss Plaintiffs' first and second causes of action against Sheriff Gore.

### C. *Third and Fourth Causes of Action: Section 1983 Claims Pursuant to the Fourth Amendment*

In contrast to the first two causes of action, the third and fourth causes of action contain no specified allegations against Sheriff Gore. Plaintiffs allege they were at or near the memorial site, or on public property, and Defendants (particularly the Doe Defendants who were the arresting officers) performed arrests without probable cause. (SAC ¶¶ 88–98, 110.) Plaintiffs allege "[t]he DOE Defendants Sheriff Deputies and El Cajon Police Officers" who were present did not attempt to stop their fellow officers "from violating Plaintiffs' constitutional rights" even though they knew or should have known that arresting Plaintiffs was unconstitutional. (*Id.* ¶¶ 99, 111.) Plaintiffs have not alleged that Sheriff Gore personally participated in these alleged violations, nor that he implemented any policy regarding the allegedly unconstitutional arrests. Thus, the Court **GRANTS IN PART** the Motion to Dismiss and **DISMISSES** causes of action three and four against Sheriff Gore **WITHOUT PREJUDICE**.

## II. Section 1983 Claims Against the County of San Diego (First through Fourth and Seventh Causes of Action)

The Court previously dismissed the County from this case due to Plaintiffs' sparse allegations against it in the FAC. (Prior MTD Order 5–6.) The County again moves to dismiss all claims against it in the SAC. The first through fourth causes of action are brought under § 1983 and the seventh cause of action is titled a *Monell* claim. Defendants

8

16-CV-2575-JLS (BGS)

refer to the seventh cause of action as "a catch-all 1983 claim." (County MTD 15.)

To establish municipal liability under § 1983 for violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th Cir. 1997) (alterations in original) (internal quotation marks omitted) (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). In regards to the second element,

> [T]here are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

Plaintiffs state they proceed under the second and third methods of establishing the County had a policy. (County Opp'n 17.) Plaintiffs argue Sheriff Gore ordered the assemblies to be declared unlawful, his acts represent official policy, and the County is therefore liable for implementation of Gore's illegal policy. (*Id.* at 17–18.)[5]

A municipality may incur section 1983 liability under these methods when the

---

[5] Plaintiffs do not appear to be arguing the first method of establishing a policy by the municipality applies in this case, i.e., that there exists "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *See Ulrich*, 308 F.3d at 984. In any event, the Court finds Plaintiffs have not established a policy through this method. "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978)). Plaintiffs have not pled any such longstanding custom exists, thus, the Court analyzes the second and third methods from *Ulrich* to determine whether the County had a policy.

individual who committed the constitutional violation was an official with "final policy-making authority" and when the challenged action itself constituted an act of official government policy. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). "As to matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority." *Trevino*, 99 F.3d at 920 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991)).

As to the First Amendment violations, the Court finds Plaintiffs have adequately pled a claim against the County under the allegation that Sheriff Gore implemented a policy which could be represented as a policy of the County that violated Plaintiffs' First Amendment rights, *see supra* Section I.B. The Court finds Sheriff Gore is plausibly pled as a person with final policymaking authority on the relevant issue.[6] The Court **DENIES** County Defendants' Motion to Dismiss causes of action one, two, and seven, against the County.

As to the Fourth Amendment violations, Plaintiffs do not assert Sheriff Gore instituted a policy regarding the violation of their Fourth Amendment rights (the third and fourth causes of action). Thus, Plaintiffs have not established municipal liability for the County for this alleged violation. The Court **GRANTS IN PART** County Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** causes of action three and

---

[6] As noted above, four elements must be proven to establish municipal liability. *Plumeau*, 130 F.3d at 438. Defendants focus on the second element, the existence of a policy. As to the first element, Defendants do not argue Plaintiffs were not deprived of a constitutional violation, and the Court has noted that Defendants must address this element in future pleadings if they contest the allegation. *See supra* footnote 4.

As to the third element, "before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference'" to his constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). This occurs when the need for more or different action "is so obvious, and the inadequacy [of the policy] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt*, 954 F.2d at 1478.

At this stage, the Court finds it is plausible that the policy as alleged evidences a deliberate indifference to Plaintiffs' rights, and that the policy as alleged was a "moving force" behind the violation. Defendants have not contested this or convinced the Court otherwise.

four against the County.

## III. Claims Under The Bane Act (Eighth Cause of Action)

### A. *Legal Standard*

The Eighth Cause of Action in the SAC is for violation of California Civil Code § 52.1, also known as the Bane Act, brought against all Defendants. The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(a). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 949 P.2d 941, 944 (Cal. 1998). To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, by the specified improper means, prevent the plaintiff from doing something that he had the right to do under the law, or force plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (Ct. App. 2007) (citing *Jones*, 949 P.2d at 944). The relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

### B. *Claim Against Sheriff Gore*

Plaintiffs state Defendants used the threat of force and arrest for the purpose of preventing Plaintiffs from exercising their right to engage in peaceful expressive activity. (SAC ¶ 168.) Plaintiffs allege the orders to disperse on September 30 and October 1–2, 2016, as well as the arrests of and threat of arrest of Plaintiffs, violated the Bane Act. (*Id.* ¶¶ 170–73, 176.) Specifically, Plaintiffs allege Sheriff Gore is liable "because such conduct occurred during the course and scope of [his] employment and was part of a pattern and practice of illegal conduct approved by [Gore] that was designed, on information and

belief, to deprive peaceful protesters of their civil rights by means of force, violence, threats, intimidation, and coercion." (SAC ¶ 177.) As detailed above, Plaintiffs allege their First and Fourth Amendment rights were violated when Sheriff Gore declared the vigils to be unlawful and ordered deputies to arrest Plaintiffs without probable cause. (County Opp'n 15.)

Various courts have held that supervisor liability does not apply to Bane Act claims. *See, e.g.*, *Redmond v. San Jose Police Dep't*, No. 14-cv-2345-BLF, 2017 WL 5495977, at *30 (N.D. Cal. Nov. 16, 2017) (holding supervisory liability should not be extended to the Bane Act) ; *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1119 n.19 (E.D. Cal. 2012) (holding that "no case has actually applied supervisor liability a Bane Act claim and this federal Court is loathe to expand the reach of Bane Act liability"). The Court agrees, and Plaintiffs have not cited to any contradictory authority or reason why the Court should depart from this precedent. The Court therefore **GRANTS IN PART** the Motion to Dismiss and **DISMISSES** Plaintiffs' Bane Act claim against Sheriff Gore **WITHOUT PREJUDICE**.

### C. Claims Against Doe Defendants

Under the Bane Act, whether there was a violation of a right and whether that violation was accomplished by threat, intimidation or coercion are separate inquiries. *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1064 (E.D. Cal. 2009). Defendants focus on the second inquiry, thus, the Court will do the same. In cases involving allegedly unlawful arrests, the "wrongful arrest or detention, without more, does not satisfy both elements of section 52.1." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 69 (Ct. App. 2015); *see also Walters v. City of San Diego*, 12-cv-589-CAB-DHB, 2016 WL 8458040, at *2 (S.D. Cal. Aug. 29, 2016) (same).

Plaintiffs have alleged <u>all</u> Defendants threatened them with arrest if they continued to protest and they were precluded from visiting the vigil site because of threats by Defendants. (SAC ¶¶ 168–173.) Applying this to the Doe Defendants (i.e., the unnamed officers), there are sufficient factual allegations to suggest a reasonable person would have

been intimidated by the officers' conduct and the officers in general used improper means to prevent plaintiffs "from doing something [they] had the right to do under the law." *Austin B.*, 149 Cal. App. 4th at 883. But, the SAC does not name any individual officers as Defendants and fails to connect any of the named individual Defendant officers to the alleged arrest threats. *See Sanchez*, 914 F. Supp. 2d at 1118 (finding the referenced defendant officers must be connected to the use of intimidation, threats, or coercion). The Court finds it would be improper to allow this cause of action to move forward based on general allegations against unnamed defendants, when it has not been alleged who made the threats or engaged in intimidating conduct. The Court therefore **GRANTS IN PART** the Motion to Dismiss and **DISMISSES** Plaintiffs' Bane Act claim against the Doe Defendants **WITHOUT PREJUDICE**.

### D. *Claim Against the County*

The County argues the Bane Act does not apply to municipalities. (County MTD 21). Indeed, the language of the Bane Act specifically provides for a cause of action if "<u>a person or persons</u>" interferes with another's rights in specific circumstances. Cal. Civil Code § 52.1 (emphasis added). But, the County's argument has been rejected in similar situations by courts in this district. *See Cameron v. Buether*, 09-CV-2498-IEG (WMC), 2010 WL 2635098, at *5–6 (S.D. Cal. Mar. 23, 2010) (allowing amendment for a Bane Act violation against the County of San Diego); *Shoval v. Sobzak*, No. 09-cv-01349-H (JMA), 2009 WL 2780155, at *3 (S.D. Cal. Aug. 31, 2009) ("Defendants have not made a sufficient showing that this definition does not encompass California counties, especially in light of the many cases naming counties as defendants in § 52.1 causes of action."). The Court agrees, and the Bane Act cause of action against the County will not be dismissed for this reason.

However, the County is only liable if it is determined that the injury was proximately caused by County employees acting within the scope of their employment if the act or omission would "have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2. Because the Court finds Plaintiffs have not

13

16-CV-2575-JLS (BGS)

adequately pled a Bane Act violation as to any individual Defendants, *see supra* Section III.C., there is no vicarious liability against the County. Liability could extend to the County if Plaintiffs prevail on their Bane Act claim against the officers. *See Redmond*, 2017 WL 5495977, at *31 (finding the same). The Court therefore **GRANTS IN PART** the Motion to Dismiss and **DISMISSES** Plaintiffs' Bane Act claim against the County **WITHOUT PREJUDICE**.[7]

## CITY DEFENDANTS' MOTION TO DISMISS

**I.     Chief Jeff Davis**

   *A.     Section 1983 Claims Against Chief Davis (First Through Fifth Causes of Action)*

Chief Davis states he "joins in" on the arguments made by Sheriff Gore regarding the alleged violation of 42 U.S.C. § 1983 because the allegations against Sheriff Gore and Chief Davis are substantially similar. (City MTD 13.)

As to the first and second causes of action, the Court's findings as to Sheriff Gore detailed above apply to Chief Davis for the most part. Plaintiffs have made similar allegations against Chief Davis and Sheriff Gore. (*See* SAC ¶ 47 (alleging the Sheriff's Department was acting "at the behest" of Davis when it declared the vigil unlawful in violation of the First Amendment or that Davis failed to properly train his officers which resulted in a violation of Plaintiffs' constitutional rights).) Accordingly, the Court **DENIES** the Motion to Dismiss causes of action one and two against Chief Davis.

As to the third and fourth causes of action, in contrast to the allegations against Sheriff Gore, Plaintiffs do allege Chief Davis "implemented an illegal policy of threatening

---

[7] Further, as County Defendants note, the Bane Act cause of action is brought by only four Plaintiffs. One of these Plaintiffs, Mr. Franklin, alleges his arrest on October 17, 2016 was a violation of the Bane Act. (SAC ¶ 172.) However, Mr. Franklin alleges he was arrested by El Cajon police officers, and asserts his rights were violated by City Defendants. (*Id.* ¶ 34.) Yet, Mr. Franklin brings the Bane Act claim against all Defendants. Plaintiff Franklin therefore has not adequately asserted a Bane Act violation against County Defendants in the SAC. Plaintiffs are to allege their causes of action with specificity in their amended complaint to avoid issues such as this.

arrest and arresting protestors at the site of the vigil, despite the property being open to the public." (*Id.* ¶ 48.) Plaintiffs allege Dr. Branch, the local president of the NAACP, was informed that the City of El Cajon Police Department was arresting those who came onto the vigil site. (*Id.* ¶ 139.) Plaintiffs also allege the City of El Cajon has posted police officers and a mobile observation tower at the vigil site for most of the day and night. (*Id.* ¶¶ 141–42.) The Court finds these allegations are sufficient to allege a plausible § 1983 claim against Chief Davis. *See Starr*, 652 F.3d at 1207–08 (finding supervisorial liability can be established under § 1983 by the supervisor "setting in motion a series of acts by others" or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury" (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001))). The Court **DENIES** City Defendants' Motion to Dismiss causes of action three and four against Chief Davis. Similarly, the Court **DENIES** the Motion to Dismiss the fifth cause of action against Chief Davis; this cause of action is a related allegation pursuant to the Fourth Amendment brought by Plaintiffs Box, Carter, and Vilsaint.

## II. Municipal Liability Against the City of El Cajon (First through Fifth and Seventh Causes of Action)

City Defendants cursorily argue Plaintiffs have not established municipal liability against the City because they have not established "a longstanding practice or custom" and the allegation that Chief Davis approved a pattern of illegal conduct is not sufficient to survive the present motion. (City MTD 15.) A similar analysis applies to the City of El Cajon as it did to the County of San Diego, *see supra* p. 8–10. Plaintiffs have not established a longstanding practice exists in the City of El Cajon as it relates to the alleged constitutional violations. However, Plaintiffs have established that Chief Davis, as someone with final policymaking authority, established a policy that represented an official policy of the City that violated Plaintiffs' First and Fourth Amendment rights, *see supra* p.

14–15.[8] The Court **DENIES** the Motion to Dismiss the first through fifth and seventh cause of action as to the City of El Cajon.

### III. Bane Act Claim (Eighth Cause of Action)

City Defendants adopt County Defendants' arguments for Plaintiffs' Bane Act claim. (City MTD 13.) As addressed above, Plaintiffs have failed to plead an adequate Bane Act violation as to individual Defendants, and have not established supervisorial liability. The same reasoning applies to the City Defendants. The Court therefore **GRANTS IN PART** the Motion to Dismiss and **DISMISSES** Plaintiffs' Bane Act claim against City Defendants **WITHOUT PREJUDICE**.

### IV. Declaratory Relief (Sixth Cause of Action)

Plaintiffs seek declaratory relief "that the City of El Cajon cannot arrest activists for criminal trespass for visiting the vigil site, unless such activists are intentionally interfering with a business establishment by intentionally interfering with a business establishment by intentionally obstructing or intimidating the business or its customers." (SAC ¶ 148.) Plaintiffs previously requested three different judicial declarations, and the Court dismissed the claim. (Prior MTD Order 8–9.) City Defendants argue the Court should again dismiss this cause of action because Plaintiffs "do not allege that they have permission from the property owners to participate in any activity on the privately owned property [and] any arrest occurring in the future would have to be evaluated for legal compliance at the time of the arrest." (City MTD 14.)

A court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Accordingly, a district court must determine at the outset whether the parties have presented an actual case or controversy within the court's jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "In order for a case to be justiciable under Article III of the Constitution, it must be ripe for

---

[8] The Court's findings and admonitions made above regarding the elements required to establish municipal liability apply to the City of El Cajon. *See supra* footnote 6.

review." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991). "The burden of establishing ripeness . . . rests on the party asserting the claim." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). "A claim is not ripe if it involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). "For a suit to be ripe within the meaning of Article III, it must present 'concrete legal issues, presented in actual cases, not abstractions.'" *Colwell*, 558 F.3d at 1123 (quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947). "The ripeness doctrine demands that . . . litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990). However, "[a]t the same time, a litigant need not await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly* impending, that is enough." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).

Plaintiffs argue there is a "persistent pattern of incorrectly applying Penal Code section 602" and request judicial resolution that City Defendants will not arrest people "simply for visiting the vigil site." (City Opp'n 22–24.) Plaintiffs' assertion that they will be arrested for trespass when they are not interfering with the business establishments cannot be said to be "direct and immediate" nor "certainly impending." Indeed, Plaintiffs assert they have asked the City whether they will be arrested for trespassing on the site, and the City has refused to answer Plaintiffs. (SAC ¶¶ 143–44.) Further, the Court agrees with Defendants that any future arrests must be evaluated on a case-by-case basis; the Court will not impose a blanket judicial order that Plaintiffs will not be arrested for criminal trespass <u>unless</u> they intentionally interfere with a business establishment. There are many reasons one could be guilty of trespass. *See* Cal. Penal Code § 602. Thus, the Court **GRANTS IN PART** City Defendants' Motion to Dismiss the sixth cause of action and **DISMISSES** the claim **WITHOUT PREJUDICE**.

## V. Qualified Immunity as to the Individual Police Officers

The Court previously found it could not say at the motion to dismiss stage that the individual officers were shielded by qualified immunity. (Prior MTD Order 16.) City Defendants now argue it is appropriate for the Court to reconsider the issue due to a recent Ninth Circuit opinion in *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017). (City MTD 15.) Defendants are couching their request as a part of their Motion to Dismiss, but are truly asking the Court to reconsider its prior finding.

In *S.B.*, the district court denied qualified immunity to San Diego Sheriff's Deputy Moses. On interlocutory appeal, the Ninth Circuit reversed. In that case, Deputy Moses and two other officers responded to a call about a mentally ill and intoxicated man, Brown, who was "acting aggressively." When they entered the house, the officers saw Brown had knives in his pockets and they demanded he kneel. Brown complied, but grabbed a knife from his back pocket, and in that moment, Moses shot Brown. Various issues regarding Brown's actions and the risks he imposed were unclear. *Id.* at 1013. The Ninth Circuit cited to prior case law for the test of qualified immunity: "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id.* (citing *C.V. by & through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016)). The court found Moses's use of deadly force "was not objectively reasonable, and therefore violated Brown's Fourth Amendment right against excessive force." *Id.* at 1014. But, the Ninth Circuit also found that the alleged violation of Brown's right was not clearly established at the time of the alleged misconduct. *Id.* at 1016. The Ninth Circuit reversed the district court, explaining that the court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)). The Ninth Circuit could not find such a case, and the court determined that the shooting was not an "obvious" or "run-of-the-mill" constitutional violation. Officer Moses was therefore entitled to qualified immunity for his use of deadly force. *Id.* at 1017.

In their Motion, City Defendants dedicate about one page to a discussion of *S.B.* and go on to dedicate approximately six pages to case law and analysis on qualified immunity. City Defendants present no evidence that the Court's finding as to qualified immunity should be altered due to changed allegations in the SAC. Nor do City Defendants argue that *S.B.* is a change in the law that warrants reconsideration. *See Saucier v. Katz*, 533 U.S. 194 (2001) (setting forth the two-part approach for analyzing qualified immunity applied in *S.B.*). City Defendants argue that the second prong of the qualified immunity (whether the right at issue was "clearly established" at the time) cannot be met. But the Court has already pointed to law that shows the alleged violation of Plaintiffs' rights was clearly established when taking Plaintiffs' allegations as true. Plaintiffs have alleged that the protests were peaceful at all times, but the protests were wrongly declared unlawful and they were forced to disperse and some were wrongfully arrested, thus violating their rights. The Court found these allegations, when taken as true, demonstrate that "the officers' determinations that the protests were unlawful assemblies . . . were clearly incorrect." (Prior MTD Order 14.) *See Collins v. Jordan*, 110 F.3d 1363, (9th Cir. 1996) ("[I]t is clearly established federal and state law that protests or assemblies cannot be dispersed on the ground that they are unlawful unless they 'are violent or . . . pose a clear and present danger of imminent violence,' or they are violating some other law in the process." (internal citations omitted)). Therefore, at this stage the Court cannot say the officers are shielded by qualified immunity. The Court **DENIES** City Defendants' Motion to Dismiss for this reason.

## CONCLUSION

Given the foregoing, the Court **GRANTS IN PART** Defendants' Motions to Dismiss and **DISMISSES**: (1) Plaintiffs' Third and Fourth Causes of Action as to Sheriff William Gore and the County of San Diego; (2) Plaintiffs' Sixth Cause of Action; (3) Plaintiffs' Eighth Cause of Action. Defendants' Motions to Dismiss are otherwise **DENIED**. Plaintiffs are granted **LEAVE TO AMEND** their Complaint. Plaintiffs **SHALL** file any such amendment on or before thirty (30) days of the date on which this

<u>Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: March 19, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge