UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO BRANCH OF NATIONAL
ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE; ERIC BIDWELL, an
individual; CARL BOX, an individual;
ERIC BURNEY, an individual;
LEVANDIS CARTER, an individual;
TEGAN DANIELS, an individual;
MICHAEL FEINSTEIN, an individual;
ANTHONY JIMENEZ, an individual;
ANDREW A. PASTER, an individual;
JEFF PROVENZANO, an individual;
IAN WHITEHOUSE, an individual;
JAMIE WILSON, an individual and on
behalf of her three minor children J.J.R.,
J.T.A.R., and J.A.R.,

                                   Plaintiffs,

v.

COUNTY OF SAN DIEGO, a
Subdivision of the State; WILLIAM D.
GORE, Sheriff of the COUNTY OF SAN
DIEGO; CITY OF EL CAJON, a Charter
City; JEFF DAVIS, the Police Chief of
the CITY OF EL CAJON; RODRIGO
ARISTIZABAL, a Sheriff's Deputy;
JAMES BALDERSON, a Sheriff's
Deputy; JACOB BOOHER, a Sheriff's
Deputy; ELVYS CABRERA, a Sheriff's

Case No.: 16-CV-2575 JLS (MSB)

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS**

(ECF Nos. 73, 74)

Deputy; DANIEL FOLLOSCO, a Sheriff's Deputy; MATHEW GIBSON, a Sheriff's Deputy; ELISHA HUBBARD, a Sheriff's Deputy; ERICSON LAMASTER, a Sheriff's Deputy; ERIC PRICE, a Sheriff's Deputy; TYLER SKEELS, a Sheriff's Deputy; MELISA CALDERSON, an El Cajon Police Officer; KENNETH DAVENPORT, an El Cajon Police Officer; GREG ROBERTSON, an El Cajon Police Officer; JASON SARGENT, an El Cajon Police Officer; and DOES 1–40, inclusive,

Defendants.

Presently before the Court are two Motions to Dismiss: (1) Defendants City of El Cajon; Jeff Davis, police chief of the City of El Cajon; and El Cajon Police Officers ("the Officer Defendants") Melisa Calderon, Kenneth Davenport, Greg Robertson, and Jason Sargent's (the "City Defendants") Motion to Dismiss Plaintiffs' Third Amended Complaint Pursuant to Rule 12(b)(6) (the "City MTD," ECF No. 73); and (2) Defendants County of San Diego; William D. Gore, Sheriff of the County of San Diego; and Sheriff Deputies (the "Deputy Defendants") Rodrigo Aristizabal, James Balderson, Jacob Booher, Elvys Cabrera, Daniel Follosco, Mathew Gibson, Elisha Hubbard, Ericson Lamaster, Eric Price, and Tyler Skeels' (the "County Defendants") Motion to Dismiss Plaintiffs' Third Amended Complaint (the "County MTD," ECF No. 74). Plaintiffs San Diego Branch of the National Association for the Advancement of Colored People ("NAACP"); Eric Bidwell; Carl Box; Eric Burney; Levandis Carter; Tegan Daniels; Sean Farris; Michael Feinstein; Azikiwe Franklin; Anthony Jimenez; Andrew A. Paster; Kristen Preston; Jeff Provenzano; Aleksandar Sheringov; Jean Vilsaint; Ian Whitehouse; and Jamie Wilson, individually and on behalf of her three minor children, J.J.R., J.T.A.R., and J.A.R., have filed Oppositions to both Motions (the "County Opp'n," ECF No. 76; the "City Opp'n," ECF No. 77). Defendants each filed Replies in support of their Motions (the "City Reply," ECF No. 78;

the "County Reply," ECF No. 79). The Court vacated the hearing on the Motions and took the matters under submission without oral argument. ECF No. 80. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motions.

## FACTUAL BACKGROUND[1]

On September 27, 2016, Alfred Olango, an unarmed African American man, was shot and killed by a City of El Cajon (the "City") police officer. Third Am. Compl. ("TAC"), ECF No. 69, ¶ 2. The shooting occurred at a shopping center parking lot behind a restaurant, Los Panchos, at what is commonly known as Broadway Village Shopping Center, located at 777 Broadway. *Id.*

Believing that the shooting was another example in a long line of fatal interactions between people of color and law enforcement, members of the community held a series of protests, rallies, and vigils beginning the day after the shooting and lasting for several weeks. *Id.* ¶¶ 3–4. On September 30, 2016, a protest march was held. *Id.* ¶ 5. Messrs. Farris, Sheringov, and Vilsaint participated in the protest march. *Id.* ¶ 67; *see also id.* ¶¶ 32, 39–40. There was no threat of violence, *id.* ¶ 5, and the marchers were peaceful at all times. *Id.* ¶ 69. Both the City Police Department and San Diego County (the "County") Sheriff's Department had monitored the march and knew of the non-violent nature of the assembly. *Id.* ¶ 75. Nonetheless, at approximately midnight, the march was declared to be an unlawful assembly and the protestors were ordered to disperse by members of the County Sheriff's Department and the City Police Department, who were dressed in riot gear. *Id.* ¶ 5. By declaring the protest unlawful and ordering the protestors to be dispersed, Defendants intended to chill Plaintiffs' free speech rights. *Id.* ¶ 79. Messrs. Farris, Sheringov, and Vilsaint dispersed as ordered by Defendants. *Id.* ¶ 80; *see also id.* ¶¶ 32, 39–40.

---

[1] When ruling on a motion to dismiss pursuant to Rule 12(b)(6), as here, the Court must "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party." *United States v. LSL Biotechs.*, 379 F.3d 672, 698 (9th Cir. 2004) (quoting *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000).

On October 1, 2016, community members held a vigil on private land being used "with permission" of Los Panchos. *Id.* ¶ 6. At this vigil, approximately eighty members of the community gathered and created a memorial with tables, candles, photographs, signs, and a canopy. *Id.*; *see also id.* ¶ 91. Some members barbequed and offered free food to the community. *Id.* Some collected donations for Mr. Olango's family. *Id.* ¶ 6. The vigil was quiet and peaceful, and there was no protest march. *Id.*; *see also id.* ¶ 91.

Although there was no credible evidence of an imminent threat of violence from the vigil attendees, *id.* ¶ 92, a helicopter flew overhead at approximately midnight, informing the attendees that the gathering was unlawful and ordering them to disperse. *Id.* ¶ 7. Defendants ordered Plaintiffs to disperse because monitoring the vigil was inconvenient and Defendants sought to chill Plaintiffs' First Amendment rights. *Id.* ¶¶ 93–94. Many attendees did disperse in compliance with the order. *Id.* ¶ 7.

Shortly thereafter, two lines of Sheriff's deputies wearing helmets and bullet-proof vests and carrying batons blocked two exits of the shopping center. *Id.* ¶ 8. Some community members, including some Plaintiffs, spoke with the deputies "to convince them of their lawful right to continue the vigil." *Id.* The deputies would not let the vigil continue unless only a handful of people remained. *Id.* There was no threat of violence by attendees of the vigil, and no behavior that could be called violent, boisterous, or tumultuous. *Id.* ¶ 10. At all times, the "Sheriff's deputies could easily see and ascertain the peaceful nature of the vigil." *Id.*

At approximately 12:30 a.m., however, the Sheriff's deputies advanced on the vigil, dispersing the participants, including Plaintiffs. *Id.* ¶ 9. Approximately twelve people participating in a prayer circle refused to leave and were arrested for failure to disperse from an unlawful assembly. *Id.*; *see also id.* ¶¶ 26, 30, 32–33, 37–41, 102–11. Mr. Bidwell was arrested by Deputy Balderson, Mr. Carter was arrested by Deputer Lamaster, Mr. Farris was arrested by Deputy Gibson, Mr. Feinstein was arrested by Deputy Skeels, Ms. Preston was arrested by Deputy Price, Mr. Provenzano was arrested by Deputy Follosco, Mr. Sheringov was arrested by Deputy Cabrera, Mr. Vilsaint was arrested by

Deputy Aristizabal, and Mr. Whitehouse was arrested by Deputy Hubbard. *Id.* ¶¶ 26, 30, 32–33, 37–41, 48–49, 51–57, 102–11, 197–99, 215, 224, 230.

Ms. Wilson was also arrested and placed in zip-tie handcuffs by unknown Deputies in front of her children, J.J.R., J.T.A.R., and J.A.R. *Id.* ¶¶ 42–43, 121–23. She was released at the scene when members of the assembly informed the police that her children were crying and screaming. *Id.* ¶¶ 42–43, 123.

None of Plaintiffs was acting in a threatening or violent manner at any time before or during his or her arrest. *Id.* ¶¶ 102–11. Mr. Provenzano did attempt to film the incident, which he believes contributed to his arrest. *Id.* ¶¶ 38, 108. Members of the community have been reticent to generate large crowds since the incident due to fear of arrest and retaliation. *Id.* ¶ 96.

Nonetheless, on October 15, 2016, members of the community held another vigil at the vigil site. *Id.* ¶ 11. Again, the attendees engaged in no violent, boisterous, or tumultuous conduct, but Defendants declared the vigil to be an unlawful assembly at approximately midnight. *Id.* Defendants additionally asserted that Plaintiffs were trespassing. *Id.*

Beginning on October 16, 2016, and continuing to the present, the City and its Police Chief "have threatened to arrest any community members/protestors who go to the shopping center to visit the vigil site, despite the property being open to the public." *Id.* ¶ 13. On information and belief, the City Police threaten to arrest anyone who does not go into a store in the shopping center and obtain a receipt. *Id.* The City Police have even threatened to arrest those who visit the vigil site after purchasing items for trespassing. *Id.*

On October 17, 2016, the City Police arrested seven community members, including Messrs. Box, Carter, and Vilsaint, *id.* ¶ 134–38, for trespassing and/or unlawful assembly at the vigil site, and arrested Mr. Franklin for standing on the sidewalk nearby. *Id.* ¶¶ 14–15, 28, 30, 34, 40, 139, 158–59, 200. Mr. Box was arrested for trespassing by Officer Sargent, Mr. Vilsaint was arrested for trespassing by Officer Calderon, Mr. Carter was arrested for trespassing by Officer Davenport, and Mr. Franklin was arrested for

trespassing by Sergeant Robertson. *Id.* ¶¶ 28, 30, 34, 40, 58–61, 141–44, 200, 216, 225, 230. None of Plaintiffs was physically blocking or intentionally intimidating any customers. *Id.* ¶¶ 141–44.

Plaintiffs allege that the arrests were made to discourage them and the community from exercising their First Amendment rights at the vigil site. *Id.* ¶ 147. Mr. Franklin also believes that he was arrested despite having left the vigil site because he was a witness to and vocal critic of the police officers, *id.* ¶¶ 34, 144, and that the arrest was intended to send a threatening message. *Id.* ¶ 200.

Beginning on October 17, 2016, and continuing for months, the City also posted police officers in the Broadway Village Shopping center for all or most of the day or night, *id.* ¶¶ 16, 160, and posted a mobile observation tower in the parking lot. *Id.* ¶¶ 17, 161.

In late 2016, Plaintiffs sought to determine whether they would be arrested for trespassing if they visited the vigil site. *Id.* ¶¶ 18, 162. The City refused to answer the inquiry. *Id.* ¶¶ 19, 163. Plaintiffs would visit the vigil site but for the possibility of arrest by Defendants. *Id.* ¶¶ 20, 164.

On September 27, 2017, the anniversary of the shooting, the NAACP was informed that the City Police Department was threatening to arrest anyone who visited the vigil site. *Id.* ¶ 166. Although the NAACP sought an agreement that citizens would not be arrested for visiting the vigil site, the City Police Department refused to agree. *Id.* Consequently, members of the NAACP felt threatened and either did not visit the vigil site or visited for a very short amount of time. *Id.* ¶ 168. On information and belief, the shopping mall and City Police Department coordinated to turn on all the lights in the shopping mall parking lot and turn off the lights at the vigil site to intimidate those who had gathered at the vigil site. *Id.* ¶ 169.

## PROCEDURAL BACKGROUND

This action was brought by the NAACP and named Plaintiffs against the County and Sheriff William D. Gore and against the City and Police Chief Jeff Davis on October 16, 2016. *See generally* ECF No. 1. Plaintiffs brought six causes of action, one seeking

declaratory relief and five, including a *Monell* claim, under Section 1983. *See generally id.* Plaintiffs also sought a temporary restraining order ("TRO") *ex parte* to restrain defendants temporarily from declaring unlawful peaceful vigils at the vigil site or from threatening to arrest or arresting for trespass those in the vicinity of the vigil site. *See generally* ECF No. 4.

On November 4, 2016, the Court denied Plaintiffs' request for a TRO. *See generally* ECF No. 16. With respect to the unlawful assemblies under California Penal Code section 407, the Court determined that the disputed factual accounts failed to satisfy Plaintiffs' burden of showing a likelihood of substantial and immediate irreparable injury. *Id.* at 10. As to trespass under California Penal Code section 602, the Court noted that "Plaintiffs present a plausible argument that on the current facts not only does the offense for which Plaintiff Box was charged—violation of California Penal Code section 602(m)—not apply, but neither do any of the provisions of California Penal Code section 602." *Id.* at 11. Nonetheless, the Court noted that, "[i]n the present case, there is no question that the plain language of Plaintiffs' TRO request seeks only to tell law enforcement to follow the law." *Id.* at 12. The Court therefore denied the request as lacking sufficient specificity and detail. *Id.* at 13.

Shortly thereafter, Plaintiffs filed an amended complaint. *See generally* ECF No. 18. Both the City and the County Defendants separately moved to dismiss, *see* ECF Nos. 22, 23, and the Court granted in part and denied in part their motions. *See generally* ECF No. 36. The Court concluded that the "sparse allegations" against Sheriff Gore and the County were insufficient to state a claim, and therefore dismissed the claims against the County Defendants. *See id.* at 5–6. As for the City Defendants, the Court dismissed the NAACP for lack of associational standing, *see id.* at 6–7; dismissed Plaintiffs' first cause of action for declaratory relief, *see id.* at 8–10; dismissed Plaintiff's First Amendment claims except those arising from the vigil on October 1, 2016, for which Plaintiffs had permission from Los Panchos, *see id.* at 10–12; and dismissed Plaintiff's *Monell* claim against the City because the allegations against the City and Chief Davis were too

conclusory. *See id.* at 16–17. The Court allowed Plaintiffs' Fourth Amendment claims as to the City officers to proceed, finding that Plaintiffs sufficiently alleged a lack of probable cause for both the unlawful assembly and trespass arrests and that the City officers were not entitled to qualified immunity. *See id.* at 12–16.

Plaintiffs then filed a second amended complaint, adding a state cause of action for violation of the Bane Act, California Civil Code section 52.1. *See generally* ECF No. 37. Defendants again separately moved to dismiss, *see generally* ECF Nos. 44, 45, and the Court again granted in part and denied in part the motions to dismiss. *See generally* ECF No. 66. As to the County Defendants, the Court denied the motion to dismiss Plaintiffs' First Amendment claims against Sheriff Gore in his individual capacity, which failed to address any opposition to the alleged constitutional violations, finding that the allegations against Sheriff Gore were sufficient to state a claim. *Id.* at 6–8. The Court did, however, dismiss the Fourth Amendment claims against Sheriff Gore because "Plaintiffs have not alleged that Sheriff Gore personally participated in these [alleged] violations, nor that he implemented any policy regarding the allegedly unconstitutional arrests." *Id.* at 8. As for the claims against the County, the Court reached the same conclusion based on the allegations concerning Sheriff Gore in his official capacity. *See id.* at 8–11. The Court also dismissed Plaintiffs' claim under the Bane Act, concluding that there was no supervisory liability as to Sheriff Gore, the cause of action against the Doe Defendants could not move forward, and the that the claim against the County would therefore have to be dismissed. *Id.* at 11–14.

As for the City Defendants, the Court denied their motion to dismiss all claims against Chief Davis and the City. *Id.* at 14–16. The Court dismissed Plaintiffs' Bane Act claim for the same reasons it dismissed the Bane Act claim against the County. *Id.* at 16. The Court also dismissed Plaintiffs' cause of action for declaratory relief on ripeness grounds, agreeing with Defendants that "any future arrests must be evaluated on a case-by-case basis." *Id.* at 16–17. The Court denied the City Defendants' request that the Court reconsider its prior ruling on qualified immunity given the Ninth Circuit's decision in *S.B.*

*v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017). *See* ECF No. 66 at 18–19.

Plaintiffs filed their operative Third Amended Complaint on April 18, 2018. *See generally* ECF No. 69. The Third Amended Complaint added fourteen individual Sheriff's Deputies and City Police Officers as Defendants, as well as three new state law causes of action for false imprisonment, battery, and intentional infliction of emotional distress. *See generally id.* Per stipulation of the parties, the instant Motions followed on June 28, 2018. *See generally* ECF Nos. 73, 74.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a

sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## THE CITY DEFENDANTS' MOTION TO DISMISS

### I.    First, Second, and Seventh Causes of Action:  Section 1983 (First Amendment)

Plaintiffs' first, second, and seventh causes of action are brought under Section 1983 for violations of Plaintiffs' First Amendment rights. *See generally* TAC ¶¶ 66–99, 175–85. Specifically, Plaintiffs' first cause of action is brought by Messrs. Farris, Sheringov, and Vilsaint related to the events of September 30, 2016, *see, e.g.*, *id.* ¶ 67, while their second cause of action is brought by Messrs. Bidwell, Box, Burney, Carter, Farris, Feinstein, Jimenez, Paster, Provenzano, Sheringov, and Whitehouse, and Mses. Daniels, Preston, and Wilson concerning the events of October 1 and 2, 2016. *See, e.g.*, *id.* ¶ 92. Plaintiffs' seventh cause of action is a *Monell* claim brought by all Plaintiffs against the City. *See, e.g.*, *id.* ¶ 177.

The City Defendants request that these causes of action be dismissed as to the City; Chief Davis; and Officers Calderon, Davenport, Robertson, and Sargent. *See* City Mot. at 6–10. Specifically, they argue that "plaintiffs did not clearly have a constitutional right to 1) exercise their First Amendment rights by gathering and protesting on private land; and 2) there is no constitutional right to remain on private land once law enforcement has declared an unlawful assembly." *Id.* at 8. Because Plaintiffs allege that they had permission of Los Panchos only on October 1, 2016, "[t]here are no allegations in the TAC that plaintiffs had a constitutional right to protest on the private land where the vigil site was located except on . . . October 1, 2016." *Id.* The City Defendants further contend that

Plaintiffs failed "to specify whether Chief Davis was being sued in his personal or official capacity," as instructed by the Court in its last Order, and therefore urge the Court to "find Chief Davis is being sued in his official capacity only" and dismiss the claims against him as duplicative of those against the City of El Cajon. *Id.* at 9. Finally, as to the Officer Defendants, the City Defendants argue that "Plaintiffs have not alleged any facts as to these individual officers that would establish they were intentionally depriving plaintiffs of their constitutional rights at the time of their arrests." *Id.* (citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)). The City Defendants also request that, "if this Court finds the plaintiffs did not have a First Amendment right to protest on private property, then there can be no finding under the first prong that there has been a violation of a constitutional right as alleged in the complaint," meaning that "Chief Davis and the individual officers named in the TAC would be entitled to qualified immunity." *Id.* at 11.

As the Court previously explained, *see,* ECF No. 36 at 11, federal First Amendment rights do not apply with absolute force in a private shopping center, as such a location is not classified as a "public forum." *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 80–81 (1980) (explaining how earlier cases had rejected absolute First Amendment rights in private shopping centers); *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 569 (1972) ("The argument is that such a center has sidewalks, streets, and parking areas which are functionally similar to facilities customarily provided by municipalities. It is then asserted that all members of the public, whether invited as customers or not, have the same right of free speech as they would have on the similar public facilities in the streets of a city or town. . . . . The argument reaches too far.). "Nor does property lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there." *Lloyd*, 407 U.S. at 569. Otherwise put, "[t]he essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center." *Id.*

Consequently, because Plaintiffs did not dispute that the vigil location was a private shopping center, the Court concluded that "Plaintiffs do not enjoy absolute First Amendment rights in such a location." ECF No. 36 at 12 (citing *Adderley v. Florida*, 385 U.S. 39, 47–48 (1966)). Because Plaintiffs alleged that the vigil on October 1 and 2, 2016, was held with the permission of Los Panchos and that the vigil was quiet and peaceful at all times, however, the Court concluded that Plaintiffs had alleged "a plausible First Amendment violation based on the unlawful assembly declaration, corresponding order to disperse, and subsequent removal of signs and posters from the vigil site." *Id.*

The Court reaches the same conclusion as to Plaintiffs' Third Amended Complaint. Again, Plaintiffs do not dispute that the vigil site is located in a shopping center parking lot. *See* TAC ¶¶ 2, 6. Plaintiffs add no allegations that would change the Court's conclusion that the vigil site is not a public forum. As before, Plaintiffs allege that the "peaceful" vigil on October 1, 2016, was held "on private land with permission of Los Panchos." *Id.* ¶ 6. Plaintiffs do not allege that they received permission from Los Panchos for the September 30, 2016 protest march, the October 15, 2016 vigil, or the post-October 17, 2016 visits to the vigil site. All Plaintiffs except for Mr. Franklin allege harm flowing from the allegedly unlawful dispersal of the vigil on October 1 and 2, 2016. *See id.* ¶¶ 26–43; *see also id.* ¶¶ 84–99. Accordingly, the Court **GRANTS** the City Defendants' Motion as to Plaintiffs' first cause of action concerning the September 30, 2016 protest and **DENIES** the City Defendants' Motion as to Plaintiffs' second cause of action concerning the October 1 and 2, 2016 vigil. Further, because Plaintiffs failed to indicate in their Third Amended Complaint whether Chief Davis was being sued in his individual or personal capacity as specifically instructed by the Court, *see* ECF No. 66 at 5 n.3, the Court **GRANTS** the City Defendants' Motion as to all causes of action as to Chief Davis.

Regarding Plaintiffs' seventh cause of action for municipal liability, the Court previously concluded that "Plaintiffs have established that Chief Davis, as someone with final policymaking authority, established a policy that represented an official policy of the City that violated Plaintiffs' First and Fourth Amendment rights." ECF No. 66 at 15. The

Court therefore **DENIES** the City Defendants' Motion as to Plaintiffs' seventh cause of action to the extent it is predicated upon violation of Plaintiffs' First Amendment rights. Plaintiffs are **GRANTED** leave to amend on the limited grounds that they can (1) reassert their claims against Chief Davis in his individual capacity if clearly indicated in their further amended complaint; (2) allege facts showing that Plaintiffs had permission from Los Panchos or some other owner or possessor of the land in question for the September 30, 2016 protest, October 15, 2016 vigil, and/or post-October 16, 2016 vigils or visits; and/or (3) allege facts showing that the Broadway Village Shopping Center was a public forum.

## II.    Section 1983 (Fourth Amendment)

Plaintiffs' fourth, fifth, and seventh causes of action are brought under Section 1983 for violations of Plaintiffs' Fourth Amendment rights. *See generally* TAC ¶¶ 120–53, 175–85. Specifically, Plaintiffs' fourth cause of action is brought by Ms. Wilson for her arrest for failure to disperse on October 1–2, 2016, *see, e.g.*, *id.* ¶ 123; Plaintiffs' fifth cause of action is brought by Messrs. Box, Carter, Vilsaint, and Franklin for their arrests for trespass on October 17, 2016, *see, e.g.*, *id.* ¶¶ 134–39; and Plaintiffs' seventh cause of action is a *Monell* claim brought by all Plaintiffs against the City for an unlawful policy. *See, e.g.*, *id.* ¶ 181.

The City Defendants argue that these three causes of action should be dismissed because "Plaintiffs have failed to allege sufficient facts to establish they have a constitutional right to protest, gather, and exercise their First Amendment rights on the private property where the vigil is located" and "[t]he general rule is that landowners and tenants have the right to exclude persons from trespassing on private property." City Mot. at 11 (citing *Allred v. Harris*, 14 Cal. App. 4th 1386, 1390 (1993)). Because "the subject parking lot is privately owned and there are no facts suggesting it is a public forum," "plaintiffs can be subject to arrest for trespassing on private land." *Id.* at 12 (citing Cal. Pen. Code §§ 602, 602.1 *et seq.*).

This argument misconstrues Plaintiffs' fourth, fifth, and seventh causes of action, to the extent they are predicated on violation of Plaintiffs' *Fourth Amendment* rights on the

basis that the City Defendants "seized Plaintiff[s] . . . without probable cause," *see, e.g.*, TAC ¶ 125; *see also id.* ¶¶ 137, 139, or had an unlawful policy of doing so. *See, e.g.*, *id.* ¶¶ 180–81. The Court previously determined that "the officers' determinations that the protests were unlawful assemblies [pursuant to] . . . California Penal Code section 407[] were clearly incorrect" and "Plaintiffs['] allegations . . . set forth a plausible claim that the officers lacked probable cause to arrest pursuant to the unlawful assembly declarations." ECF No. 36 at 14–15. As for the post-October 16, 2016 arrests for trespass, the Court noted that "there are no allegations that the Plaintiffs who were arrested for trespassing [pursuant to Section 602(m)] intended to remain at the vigil site permanently," again meaning that the officers had no probable cause for the arrests. ECF No. 36 at 15.

The City Defendants rely on *Planned Parenthood v. Wilson*, 234 Cal. App. 3d 1662 (1991), for the proposition that "the trespass provisions of Penal Code section 602, subdivision (n) may be *constitutionally applied* to anti-abortion activities picketing on a privately owned parking lot of a small medical clinic which had posted signed declaring the use of the lot was restricted to patients and staff[]."[2] City Mot. at 12 (emphasis in

---

[2] At the time of the *Planned Parenthood* opinion, Section 602(n) provided:

> [E]very person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor: . . . Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession. The owner, the owner's agent, or the person in lawful possession shall make a separate request to the peace officer on each occasion when the peace officer's assistance in dealing with a trespass is requested. However, a single request for a peace officer's assistance may be made to cover a limited period of time not to exceed 30 days and identified by specific dates, during which there is a fire hazard or the owner, owner's agent or person in lawful possession is absent from the premises or property. In addition, a single request for a peace officer's assistance may be made for a period not to exceed six months when the premises or property is closed to the public and posted as being closed. However, this

original) (citing *Planned Parenthood*, 234 Cal. App. 3d at 1671). *Planned Parenthood*, however, is distinguishable. In that case, Planned Parenthood had sought injunctive relief against protestors who were protesting in the parking lot of the medical center in which the clinic was located. *See* 234 Cal. App. 3d at 1665–67. Here, by contrast, the question is whether peace officers had probable cause to arrest those attending a peaceful vigil in a parking lot.

The Ninth Circuit addressed the intersection of probable cause and Section 602(m) in *Edgerly v. City and County of San Francisco*, 599 F.3d 946 (9th Cir. 2010), a case cited by the Court in its prior, June 6, 2017 Order. *See* ECF No. 36 at 15. In *Edgerly*, police officers arrested the plaintiff for trespassing under what is now Section 602(m) for being on the fenced grounds of a Cooperative of which the officers knew the plaintiff was not a member. 599 F.3d at 952. The officers observed the plaintiff on the property for about five minutes, and the plaintiff informed them that he was "just chilling." *Id.* The trial court concluded that the officers had probable cause to arrest the plaintiff, *see id.* at 953, but the

---

subdivision shall not be applicable to persons engaged in lawful labor union activities which are permitted to be carried out on the property by the California Agricultural Labor Relations Act, Part 3.5 (commencing with Section 1140) of Division 2 of the Labor Code, or by the National Labor Relations Act. For purposes of this section, land, real property, or structures owned or operated by any housing authority for tenants as defined under Section 34213.5 of the Health and Safety Code constitutes property not open to the general public; however, this subdivision shall not apply to persons on the premises who are engaging in activities protected by the California or United States Constitution, or to persons who are on the premises at the request of a resident or management and who are not loitering or otherwise suspected of violating or actually violating any law or ordinance.

Cal. Pen. Code 602(n) (1990). Section 602(m) currently provides that "every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor: . . . Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession."

16-CV-2575 JLS (MSB)

Ninth Circuit disagreed with regard to Section 602(m),[3] concluding that no reasonable officer would have believed, on the facts as presented, that the plaintiff intended to "remain permanently, or until ousted," as required under Section 602(m). *Id.* at 954 (quoting *People v. Wilkinson*, 248 Cal. App. 2d Supp. 906, 908 (1967)); *see also Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1058 (E.D. Cal. 2010) (denying the defendants' motion to dismiss complaint on the ground that probable cause for arrest was apparent on the face of the complaint because, "[a]lthough Plaintiff admits he was on the property and he did not have permission to enter, the allegations in the [complaint] do not infer that Plaintiff entered the property to occupy it").

Consequently, as before, *see* ECF No. 36 at 14–15, the Court **DENIES** the City Defendants' Motion as to Plaintiffs' fourth and fifth causes of action on the grounds that "Plaintiffs['] allegations . . . set forth a plausible claim that the officers lacked probable cause to arrest pursuant to the unlawful assembly declarations" or "to arrest the relevant Plaintiffs for visiting the vigil site after October 16." As to the seventh cause of action for municipal liability, the Court **DENIES** the City Defendants' Motion, as before, *see* ECF No. 66 at 15–16, because "Plaintiffs have established that Chief Davis, as someone with final policymaking authority, established a policy that represented an official policy of the City that violated Plaintiffs' First and Fourth Amendment rights."

## III. Sixth Cause of Action: Declaratory Relief

As before, the NAACP seeks a declaration "clarifying whether the NAACP and its members are subject to arrest for criminal trespass for visiting the vigil site, when they are not intentionally interfering with a business open to the public through physically

---

[3] The Ninth Circuit did, however, conclude that there was probable cause to arrest the plaintiff under California Penal Code section 602.8(a), *see Edgerly*, 599 F.3d at 955–56, pursuant to which "[a]ny person who without the written permission of the landowner, the owner's agent, or the person in lawful possession of the land, willfully enters any lands under cultivation or enclosed by fence, belonging to, or occupied by, another, or who willfully enters upon uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to the mile along all exterior boundaries and at all roads and trails entering the lands, is guilty of a public offense." It is not clear from the face of the Third Amended Complaint whether that provision is applicable to the instant case.

obstructing or intentionally intimidating customers or employees." TAC Prayer ¶ 3. The City Defendants again advocate for dismissal of Plaintiffs' request on the grounds that there is no true case or controversy. *See* City Mot. at 12–14.

As the Court previously explained, *see* ECF No. 66 at 16–17, a court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Accordingly, a district court must determine at the outset whether the parties have presented an actual case or controversy within the court's jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "In order for a case to be justiciable under Article III of the Constitution, it must be ripe for review." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991). "The burden of establishing ripeness . . . rests on the party asserting the claim." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). "A claim is not ripe if it involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). "For a suit to be ripe within the meaning of Article III, it must present 'concrete legal issues, presented in actual cases, not abstractions.'" *Colwell*, 558 F.3d at 1123 (quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947). "The ripeness doctrine demands that . . . litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990). However, "[a]t the same time, a litigant need not await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly* impending, that is enough." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (emphasis in original).

Plaintiffs argue that there is a clear and concrete dispute ripe for declaratory relief "[b]ased on repeated inquiries since the denial of the TRO regarding whether Defendants consider it lawful to arrest people solely for visiting the vigil site." City Opp'n at 12. Plaintiffs point to the fact that seven people were arrested for trespassing on October 17, 2016, *see id.* (citing TAC ¶¶ 14, 123–24); the City posted police officers at the site and

erected a mobile observation post in the parking lot, *see id.* (citing TAC ¶¶ 160–63); and the City's attorneys refused to inform the NAACP, despite repeated requests, whether officers would continue to arrest those who visited the memorial site. *See id.* at 12–13 (citing TAC ¶¶ 162–64, 166, 168).

According to the Third Amended Complaint, however, there have been no arrests since October 17, 2016, over two years ago. The City has not informed Plaintiffs that it will arrest those who visit the memorial site. It would also appear that the City no longer has posted police officers or a mobile observation tower in the Broadway Shopping Center. *See, e.g.*, TAC ¶¶ 16–17 (noting that these measures were instituted "[s]hortly [after October 17, 2016] and continuing for months"). As before, the Court must conclude in light of the facts as alleged in the Third Amended Complaint that Plaintiffs' assertion that they will be arrested for trespass when they are not interfering with the business establishments cannot be said to be "direct and immediate" nor "certainly impending." Consequently, the Court **GRANTS** the City Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' sixth cause of action for declaratory relief.

## IV. State Law Causes of Action

### A. *Compliance with the Government Tort Claims Act*

As a preliminary matter, the City Defendants contend that Plaintiffs failed to comply with the Government Tort Claims Act, *see* City Mot. at 14–16, pursuant to which Plaintiffs were required to submit "a general description of the indebtedness, obligation, injury, damage or loss incurred," along with the "name or names of the public employee or employees causing the injury, damage, or loss, if known."[4]   Cal. Gov't Code § 910.

---

[4] Requests must also be presented within a statutorily prescribed period: "A claim relating to a cause of action for . . . injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). All other claims, however, "shall be presented . . . not later than one year after the accrual of the cause of action." *Id.* Here, the claims were timely. Plaintiffs' claims accrued, at the latest, on October 17, 2016. *See* TAC ¶¶ 199–200, 215–16, 224–25, 231–32. Plaintiffs were therefore required to submit their claims for battery, false arrest, and intentional infliction of emotional distress by April 17, 2017, *see, e.g.*, *Todd v. San Mateo Cnty.*, No. C 15-05823 JSW, 2016 WL 4992457, at *4 (N.D. Cal. Sept. 19, 2016) (claims for false imprisonment and intentional infliction of

According to the California Supreme Court,

> The purpose of these statutes is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." . . . Consequently, a claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." . . . As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions . . . , the claims statute "should not be applied to snare the unwary where its purpose has been satisfied" . . . .

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (citations omitted).

Here, Plaintiffs' claims read as follow:

> CLAIM AGAINST THE CITY OF EL CAJON
>
> TO THE HONORABLE CITY COUNCIL OF THE CITY OF EL CAJON
>
> PLEASE TAKE NOTICE that claimant . . . hereby claims damages against Respondents [City of El Cajon and Does 1 through 50] exceeding $25,000 for the unlawful order to disperse on October 1-2nd 2016 and unlawful arrest by the City of El Cajon related to the peaceful vigil located at 777 Broadway, El Cajon, CA 92024.
>
> Claimant's address is [address]. Notice should be sent to Claimant's attorney in the caption above.

---

emotional distress must be made within six months); *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1169 (C.D. Cal. 2002) (same for battery), and their claims under the Banes Act by October 17, 2017. *See Inman v. Anderson*, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018). Plaintiffs' claims here are dated March 27 and 30, 2017, *see* City Defendants' Request for Judicial Notice ("RJN"), ECF No. 73-2, Exs. A–D, within the statutory deadlines. The Court may take judicial notice of the government tort claims, although not for the truth of the allegations contained therein. *See, e.g.*, *D.K. ex rel. G.M. v. Solano Cnty. Office of Educ.*, 667 F. Supp. 2d 1184, 1189–90 (E.D. Cal. 2009).

16-CV-2575 JLS (MSB)

RJN Exs. A–D.

The Court concludes that Plaintiffs' claims were sufficient to fulfill the purposes of the claims statute. In *White v. County of San Bernardino*, No. 209CV00713JHNFMOX, 2010 WL 11475595 (C.D. Cal. Apr. 6, 2010), *aff'd*, 503 F. App'x 551 (9th Cir. 2013), for example, the plaintiff presented a claim alleging that he "was brutally tasered and arrested for no reason after [he] hit a curb that left no damage at Jack-in-the-Box on 11/11/07. [His] claim is due to excessive force and torture, false arrest, defamation of character, and permanent scarring from the taser, etc. [His] civil rights were violated based on the 4th & the due process rights of the 5th and the 14th amendments, etc." *Id.* at *9. In addition to claims under Section 1983, including *Monell* claims, the plaintiff later sued for assault, battery, false arrest and false imprisonment, negligence, intentional infliction of emotional distress, and violation of the Bane Act. *See id.* at *8. When the defendants later argued that the claims for negligence, intentional infliction of emotional distress, and violation of the Bane Act were not included in the government tort claim, the court concluded that the claims were not "so unrelated to the subsequent tort claims that Defendants did not have sufficient notice to begin their investigation." *Id.* at *9.

Similarly, in *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253 (E.D. Cal. 2014), the plaintiffs submitted a claim indicating that "[t]he police department shot [their] son while he was unarmed causing his death." *Id.* at 1259. Although the defendants conceded that the "document describe[d] factual circumstances consistent with a wrongful death claim," they argued that the plaintiffs' additional state law causes of action for violation of the Bane Act, negligence, and assault and battery should be dismissed for failure to comply with the claim requirement. *Id.* The court concluded that the plaintiffs "ha[d] 'fairly described' what Defendants [we]re alleged to have done" and "adequately notifie[d] Defendants of the underlying factual allegations presented in the [complaint]." *Id.* Consequently, the defendants "should have been able to effectively investigate the incident and should have reasonably expected possible claims for violation of constitutional rights . . . , negligence . . . , and assault and battery." *Id.* at 1259–60.

Here, as in *White* and *Moore*, Plaintiffs' claim, although lacking in detail, was sufficient to notify the City Defendants of the underlying factual allegations such that the City Defendants could effectively investigate the incident and reasonably expect claims including violation of the Bane Act, false imprisonment, battery, and intentional infliction of emotional distress. *See also Blair v. Super. Ct.*, 218 Cal. App. 3d 221, 226 (1990). The Court therefore declines to dismiss Plaintiffs' state law causes of action for failure to comply with the Government Tort Claims Act and proceeds to evaluate the sufficiency of those causes of action on the merits.

## B. Eighth Cause of Action: Violation of the Bane Act

Plaintiffs allege violation of the Bane Act, California Civil Code section 52.1, against the City,[5] *see* TAC ¶¶ 186–207, claiming that Defendants violated their "California Civil Rights . . . in that they used the threat of force and arrest against Plaintiffs for the express purpose of preventing Plaintiffs from exercising their right to engage in peaceful expressive activity." *Id.* at ¶ 193. The City Defendants contend that Plaintiffs have failed to state a claim for violation of the Bane Act because Plaintiffs have failed to allege that Officer Robertson used unreasonable force in arresting Mr. Franklin. *See* City Mot. at 16–18.

As explained in the Court's prior Order, *see* ECF No. 66 at 11, the Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(a). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). To obtain relief under this statute, a plaintiff must prove that

---

[5] Although there are allegations concerning Officer Robertson, *see, e.g.*, TAC ¶ 200, Officer Robertson is not named in the caption for Plaintiffs' Bane Act cause of action. If this omission was unintentional, Plaintiffs are directed to correct the error should they choose to file a further amended complaint.

a defendant tried to, or did, by the specified improper means, prevent the plaintiff from doing something that he had the right to do under the law, or force plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (citing *Jones*, 17 Cal. 4th at 334). The relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

The City Defendants rely upon *Koistra v. County of San Diego*, 310 F. Supp. 3d 1066 (S.D. Cal. 2018), for the proposition that Plaintiffs must allege that the officers used unreasonable force during the arrest. *See* City Mot. at 16–17. Although true within the context of a Bane Act action premised upon violation of a plaintiff's rights to be free from unreasonable search or seizure, as in *Koistra*, *see* 310 F. Supp. 3d at 1087, the analysis differs where, as here, Plaintiffs have alleged that an arrest was used as a threat, intimidation, or coercion to interfere with Plaintiffs' rights to free speech and/or assembly. *See, e.g.*, *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071 (N.D. Cal. 2013).

In *Cuviello*, the defendant officers informed the plaintiff animal rights activists that, unless they demonstrated in a designated free speech area, they would be cited. *Id.* at 1077. The plaintiffs refused, and the defendants grabbed hold of and pulled down a banner the plaintiffs were trying to hold up. *Id.* at 1077–78. The plaintiffs were then issued citations and released. *Id.* at 1078. One protestor, who was without identification, was told that she would have to be taken into custody. *Id.* Based on the threat of arrest, the protestor without identification ceased demonstrating. *Id.* The demonstrators later brought suit, alleging, among others, a claim for violation of the Bane Act. *See id.* at 1102. The district court concluded that the plaintiffs' Bane Act claim based on violation of free speech was adequately alleged because "Defendants threatened them with arrest if they were to protest outside of the 'free speech area'" and "Defendants' tearing down of Plaintiffs' banner constituted sufficient coercion which allegedly interfered with Plaintiffs' freedom of expression." *Id.* at 1103.

Here, as in *Cuviello*, Plaintiffs allege that the City Defendants violated the Bane Act by chilling their rights to engage in peaceful expressive activity through threatened or actual arrest. *See, e.g.*, *Eberhard v. Cal. Highway Patrol*, No. 3:14-CV-01910-JD, 2015 WL 6871750, at *6–*7 (N.D. Cal. Nov. 9, 2015) (denying summary adjudication as to Bane Act claim where journalist was arrested in retaliation for prior clashes with law enforcement); *Henneberry v. City of Newark*, No. 13-CV-05238-MEJ, 2014 WL 4978576, at *16 (N.D. Cal. Oct. 6, 2014) (denying motion to dismiss where "[p]laintiff . . . alleges that the arrest was without probable cause and was intended to prevent him from exercising his First Amendment rights at a public event"); *see also Lipsey v. Goree*, No. 117CV00997DADJLTPC, 2018 WL 4638309, at *4 (E.D. Cal. Sept. 26) (denying dismissal where inmate alleged that corrections officers threatened him to induce him not to submit grievances), *reconsideration denied*, 2018 WL 5099683 (Oct. 18, 2018); *Lamon v. Austin*, No. 112CV00296DADBAMPC, 2016 WL 8677172, at *4 (E.D. Cal. Feb. 12, 2016) (denying motion to dismiss where inmate suffered retaliation for filing grievances and lawsuits against prison staff). The Court therefore concludes that Plaintiffs have stated a claim against Officer Robertson.

Officer Robertson, however, is not named as a defendant to Plaintiffs' eighth cause of action, which is alleged only against the City (among the City Defendants). Plaintiffs do allege, however, that the City is liable for Officer Robertson's conduct "because such conduct occurred during the course and scope of [his] employment and was part of a pattern and practice of illegal conduct approved by Defendant[] . . . Davis." TAC ¶ 205. "Courts have consistently held that public entities may be held vicariously liable for a violation of § 52. 1, and, more specifically, that cities may be held vicariously liable for police officers' violations of § 52.1." *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 787 (N.D. Cal. 2014) (citing *Santos ex rel. Santos v. City of Culver City*, 228 Fed. App'x 655, 659 (9th Cir. 2007); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168–69 (N.D. Cal. 2009); *Ohlsen v. Cnty. of San Joaquin*, No. 06–CV–02361 GEB, 2008 WL 2331996, at *5 (E.D. Cal. June 4, 2008)). The Court therefore concludes that Plaintiffs have stated a claim

for violation of the Bane Act against the City and **DENIES** the City Defendants' Motion as to that cause of action.

### C.    Ninth Cause of Action:  False Imprisonment

Plaintiffs' ninth cause of action is for false imprisonment against the City and Officer Robertson, based on their unlawful arrest of Mr. Franklin on October 17, 2016.  *See* TAC ¶¶ 208–21.  Plaintiffs cite California Penal Code section 236 as the basis for their claim. *See id.* ¶ 214.

The City Defendants argue that Plaintiffs' cause of action for false imprisonment is defective because "[a] public entity cannot be held liable for a common law tort claim unless provided by statute" and "[t]here is no private cause of action permitted under" Section 236.  City Mot. at 18 (citing Cal. Gov't Code §§ 815, 815.2).  Further, the City Defendants contend, "[a] conclusory allegation of an unlawful arrest, as . . . here, does not automatically give rise to a claim for false imprisonment," and "[t]here are no facts alleged in plaintiff[] Franklin's claim submitted to the City of El Cajon that give rise to a cause of action for false imprisonment."  *Id.* at 19.

Plaintiffs do not respond to these arguments.  *See generally* City Opp'n at 14–18. Under Ninth Circuit precedent, the Court may therefore dismiss Plaintiffs' ninth cause of action as abandoned.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the plaintiff forfeited her right to raise an issue on appeal because her opposition to a motion to dismiss failed to suggest a continuing interest in pursuing the claim and therefore "effectively abandoned" it).  The Court recognizes, however, that "public policy favor[s] disposition of cases on their merits."  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

"Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'" *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 n.3 (1997)). "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment." *Id.* (citing *Dragna v. White*, 45 Cal. 2d 469, 471 (1955); *City of Newport Beach v. Sasse*, 9 Cal. App. 3d 803, 810 (1970)).

Plaintiffs' ninth cause of action is brought against both the City and Officer Robertson. As to Officer Robertson, the City Defendants argue that Plaintiffs' allegations are defective because they amount only to "[a] conclusory allegation of an unlawful arrest." City Mot. at 19. The Court must disagree with the City Defendants. Plaintiffs here have alleged that Officer Robertson unlawfully arrested Mr. Franklin, who was then jailed, for trespass on October 17, 2016, without probable cause because Mr. Franklin was peacefully assembled in an area open to the public and was on a public sidewalk at the time of his arrest. *See, e.g.*, TAC ¶ 216. Pursuant to *Watts*, the Court concludes that these allegations are sufficient to state a claim against Officer Robertson. *See* 256 F.3d at 891; *see also Zabala v. City of Ceres*, No. 1:15-CV-00904-GEB, 2015 WL 5178391, at *4 (E.D. Cal. Sept. 4, 2015). The Court therefore **DENIES** the City Defendants' Motion as to Plaintiffs' ninth cause of action against Officer Robertson.

As for the City, the City Defendants argue that Plaintiffs' claim is facially defective for failure to specify the statutory basis for the City's liability. *See* City Mot. at 18. Pursuant to Section 815(a), "[e]xcept as otherwise provided by statute[] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Under Section 815.2(a), however, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

It is true that Plaintiffs identify Section 236 in their ninth cause of action, *see* TAC ¶ 214, which many district courts in California have concluded does not confer a private cause of action. *See, e.g.*, *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2012 WL 5869707, at *5 (N.D. Cal. Nov. 19, 2012); *Bolbol v. City of Daly City*, No. C-09-1944 EMC, 2011 WL 3156866, at *5 (N.D. Cal. July 26, 2011); *Norwood v. Children & Youth Servs. Inc.*, No. CV107944GAFMANX, 2011 WL 13130697, at *3 (C.D. Cal. Apr. 25, 2011). Plaintiffs have failed to allege a statute providing a basis for direct liability against the City. Consequently, to the extent Plaintiffs' ninth cause of action is alleged against the City directly, the Court **GRANTS** the City Defendants' Motion and **DISMISSES WITH PREJUDICE** that cause of action based on the statutory immunity in Section 815(a). *See, e.g.*, *Calhoun v. City of San Leandro*, No. 15-CV-03600-YGR, 2015 WL 5590741, at *5 (N.D. Cal. Sept. 23, 2015).

Pursuant to Section 815.2(a), however, the City may be vicariously liable for the acts or omissions of its employees—including Officer Robertson—if committed within the scope of their employment. *See* Cal. Gov't Code § 815.2(a); *see also Sebring v. City of Petaluma*, No. 4:17-CV-06483-KAW, 2018 WL 809442, at *3 (N.D. Cal. Feb. 9, 2018) ("Plaintiff's common law claims may proceed against the [Defendant City] if he amends the causes of action to allege that the agency is liable for the acts or omissions of its employees within the scope of employment pursuant to § 815.2(a)."). Plaintiffs cite to Section 815.2(a) in opposing the County Motion. *See* County Opp'n at 19. The provision, however, is not cited in their Third Amended Complaint, *see generally* TAC ¶¶ 208–21, as is required. *Morse v. Cnty. of Merced*, No. 116CV00142DADSKO, 2016 WL 3254034, at *6–7 (E.D. Cal. June 13), *reconsideration denied in part*, 2016 WL 4000406 (July 25, 2016). Consequently, the Court **GRANTS** the City Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' ninth cause of action as to the City to permit Plaintiffs to clarify in their pleading whether they allege vicarious liability against the City based upon the actions of Officer Robertson, and the statutory and factual basis therefor. *See, e.g.*, *Calhoun*, 2015 WL 5590741, at *5.

### D.   Tenth and Eleventh Causes of Action:  Battery and Intentional Infliction of Emotional Distress

Because Plaintiffs failed to oppose dismissal of their tenth and eleventh causes of action for battery and intentional infliction of emotional distress against the City and Officer Robertson, and because Plaintiffs did not oppose dismissal of those claims against the County Defendants, *see* County Opp'n at 20–21, the Court **GRANTS** the City Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' tenth and eleventh causes of action against the City Defendants.  Should Plaintiffs' elect to amend these causes of action, they are advised to read carefully the Court's discussion of their ninth cause of action, *see supra* Section IV.C, and to apply the Court's directives to their amended tenth and eleventh causes of action.

### E.   Attorneys' Fees Under California's Private Attorney General Statute

In connection with their ninth, tenth, and eleventh causes of action, Plaintiffs request attorneys' fees under California's Private Attorney General Statute, California Code of Civil Procedure section 1021.5(a).  *See* TAC ¶¶ 221, 228, 239; *see also id.* Prayer ¶ 5.  The City Defendants request that this prayer be stricken because "[e]ven if any or all of the Plaintiffs prevailed, the only benefit conferred would be in favor of those four specific individuals; there would be no 'significant benefit . . . conferred on the general public or a large class of persons.'"  City Mot. at 24.

The Court agrees with Plaintiffs that "[i]t is premature to rule on Plaintiffs' request for attorneys' fees."  City Opp'n at 18; *see also Steines v. Crown Media U.S., LLC*, No. CV1809293CJCFFMX, 2018 WL 6330600, at *9 (C.D. Cal. Dec. 4, 2018) (denying motion to strike request for attorneys' fees under Section 1021.5 and collecting cases); *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1092 (E.D. Cal. 2018) (denying motion to dismiss prayer for attorneys' fees under Section 1021.5 as premature).  Accordingly, the Court **DENIES** the City Defendants' request to strike Plaintiffs' request for attorneys' fees under Section 1021.5.

/ / /

## THE COUNTY DEFENDANTS' MOTION TO DISMISS

### I.  Immunity for the Deputy Defendants

The County Defendants argue that the Deputy Defendants are entitled to qualified immunity or that they are absolutely immune under California Government Code section 8655.  *See* County Mot. at 4–11, 15–16.  Both arguments are founded on the contention that the County Defendants were providing "mutual aid" pursuant to the California Emergency Services Act, California Government Code §§ 8550 *et seq.*

#### A.  *Immunity for State Law Claims Pursuant to California Government Code Section 8655*

"The California Emergency Services Act recognizes and responds to a fundamental role of government to provide broad state services in the event of emergencies resulting from conditions of disaster or of extreme peril to life, property, and the resources of the state.  Its purpose is to protect and preserve health, safety, life, and property." *Martin v. Mun. Ct.*, 148 Cal. App. 3d 693, 696 (1983) (citing Cal. Gov't Code §§ 8550 *et seq.*). Section 8655 provides that "[t]he state or its political subdivisions shall not be liable for any claim based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a state or local agency or any employee of the state or its political subdivisions in carrying out the provisions of [the California Emergency Services Act]." Cal. Gov't Code § 8655.  Under the plain language of Section 8655, it applies to the County Defendants only if they were acting under the California Emergency Services Act.

In support of their argument for immunity under Section 8655, the County Defendants contend that, "[f]or purposes of the vigils at issue in this lawsuit, El Cajon requested mutual aid from the County Sheriff's Department." County Mot. at 15 (citing TAC ¶ 46 ("It is alleged on information and belief that the Sheriff's Department was acting at the request of the El Cajon Police Department.")).  Plaintiffs counter that "[n]ot all mutual assistan[ce] agreements are under the CES Act," the "County Defendants cite no case law that supports their position," and "whether [the] County Defendants were

providing services under the CES is beyond the scope of the pleadings." County Opp'n at 13–14. The County Defendants rejoin that "[c]ase law firmly holds that the section 8655 immunity applies even absent an emergency." County Reply at 6 (relying on *Soto v. California*, 56 Cal. App. 4th 196 (1997)).

The County Defendants read *Soto* and Section 8655 far too broadly. The California Court of Appeal made clear from the outset of the *Soto* decision that the underlying actions were "conducted pursuant to the California Emergency Services Act," 56 Cal. App. 4th at 198 (citing Cal. Gov't Code §§ 8550 *et seq.*), a prerequisite to immunity under Section 8655. *See* Cal. Gov't Code § 8655. The plaintiff in *Soto* was injured during a training exercise given the by California Specialized Training Institute, a division of the Office of Emergency Services, both of which "operate under the California Emergency Services Act." 56 Cal. App. 4th at 198 (citing Cal. Gov't Code §§ 8550 *et seq.*). Here, by contrast, there is no indication on the face of Plaintiffs' Third Amended Complaint that the County Defendants were acting pursuant to the California Emergency Services Act. Accordingly, the Court cannot conclude at this stage in the litigation that the County Defendants are entitled to immunity pursuant to Section 8655.

## B.   *Qualified Immunity*

The Court previously concluded as to the City Defendants that Plaintiffs' "allegations, when taken as true, demonstrate that 'the officers' determination that the protests were unlawful assemblies . . . were clearly incorrect.'" ECF No. 66 at 19 (quoting ECF No. 36 at 14) (citing *Collins*, 110 F.3d at 1371). The question, therefore, is whether the County Defendants can find a basis for the Court to reach a different conclusion as to the Deputy Defendants. The County Defendants maintain that a different result is required because "two salient facts . . . make the ten Deputy Defendants different from law enforcement defendants in any similar published cases." County Mot. at 6. Specifically, the County Defendants believe that the law was not clearly established because (1) "it was El Cajon – and not the Sheriff's Department – that declared the assembly unlawful" and, "[b]y law, the El Cajon Police Department remained in charge of the mutual aid incident

and was in charge of personnel and equipment provided by the Sheriff's Department," *id.* (citing Cal. Gov't Code § 8618) (emphasis in original); and (2) "once El Cajon Police declared the assembly unlawful, the Deputy Defendants were <u>required by the California Penal Code</u> to command the Plaintiffs to obey and leave the area." *Id.* (citing Cal. Penal Code § 726) (emphasis in original). The County Defendants further claim that, even if the law were clearly established, the County Defendants are entitled to qualified immunity because they took action in reliance on duly enacted statutes, *see id.* at 9–11, namely, the California Emergency Services Act and California Penal Code sections 409 and 726, "[n]one of [which] . . . can be fairly characterized as 'patently violative of fundamental constitutional principles.'" *See id.* at 10 (citing *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999)).

Relying on *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1997), Plaintiffs respond that "[i]n light of well-settled case law, County Defendants are not entitled to qualified immunity for dispersing and arresting Plaintiffs based on Penal Code § 407 any more than the City Defendants are." County Opp'n at 6. Further, "[l]aw enforcement officers cannot avoid liability for constitutional violations by claiming to be following orders issued by superiors." *Id.* at 7 (citing *Little v. Barreme*, 6 U.S. 170, 179 (1804); *Dugas v. Jefferson Cnty.*, 931 F. Supp. 1315, 1318 (E.D. Tex. 1996)). "A motion to dismiss based on qualified immunity cannot be granted when the officers can see the peaceful nature of the assembly with their own eyes." *Id.* at 9.

The Court previously cited *Collins* for the proposition that "it is clearly established federal and state law that protests or assemblies cannot be dispersed on the ground that they are unlawful unless they 'are violent or . . . pose a clear and present danger of imminent violence,' . . . or they are violating some other law in the process." ECF No. 66 at 19 (quoting *Collins*, 110 F.3d at 1371 (quoting *In re Brown*, 9 Cal. 3d 612, 623 (1973)) (citing *In re Bacon*, 240 Cal. App. 2d 34, 47–48 (1966))). Nonetheless, the County Defendants claim that *Collins* is inapplicable because the defendants in that case were the mayor, police chief, and other high-ranking police officers, unlike the Deputy Defendants

in this case. *See* County Mot. at 7–8. Consequently, "the Deputy Defendants should be entitled to rely on not only their own superiors but, more importantly for purposes of this action, entitled to rely on the decisions of the completely separate law enforcement agency – El Cajon Police – that, as a matter of law, 'remained in charge' of the incidents pursuant to Government Code § 8618." County Mot. at 8.

First, for the reasons articulated before, the Court must conclude that it is not clear from the face of the Third Amended Complaint that the County Defendants were acting pursuant to a mutual aid operational plan approved in compliance with the California Emergency Services Act. Consequently, the Court cannot conclude at this stage in the litigation that the County Defendants were governed—or shielded—by the California Emergency Services Act.

Second, the Court finds unavailing the County Defendants' arguments that *Collins* is distinguishable because "the Ninth Circuit recognizes that line officers are not held to the same standard as their superiors when it comes to constitutional rights of defendants," County Mot. at 7, and "[t]he Deputy Defendants should not be held to the same standard as was the mayor and police chief in *Collins*." County Mot. at 8. *Collins* used broad language that did not distinguish between line officers and their superiors: "[I]t is clearly established federal and state law that protests or assemblies cannot be dispersed on the ground that they are unlawful unless they 'are violent or . . . pose a clear and present danger of imminent violence,' . . . or they are violating some other law in the process." 110 F.3d at 1371.

Further, as the County Defendants themselves acknowledge, *see* County Mot. at 7–8, the Ninth Circuit has distinguished between line officers and their supervisors in the specific context of executing a search warrant. In *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002), *aff'd*, 540 U.S. 551 (2004), for example, the Ninth Circuit reasoned that "[w]hat's reasonable for a particular officer depends on his role in the search[ b]ecause searches often 'require[] cooperation and division of labor'" and "only one or a few officers plan and lead a search, but more—perhaps many more—help execute

it." *Id.* at 1027 (quoting *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986)). The County Defendants do not identify—and the Court has not found—any cases in which the Ninth Circuit has distinguished between line officers and their superiors outside of the context of executing a search warrant. In the absence of Ninth Circuit authority to the contrary, the Court declines to extend *Ramirez* beyond its stated scope.

Even if *Ramirez* were applicable to this fact pattern, however, the Court determines that it is still distinguishable: unlike in *Ramirez*, this is not an instance in which some other defendant made a determination as to probable cause to arrest Plaintiffs. Rather, each Deputy Defendant here is alleged to have decided to arrest each Plaintiff without probable cause.[6] *See, e.g.*, TAC ¶¶ 101–16. The underlying inquiry, therefore, is whether each Deputy Defendant acted reasonably under the circumstances. *See Ramirez*, 298 F.3d at 1027. As with the City Defendants, *see* ECF No. 36 at 16; ECF No. 66 at 18–19, the Court concludes that, "at this stage[,] the Court cannot say the officers are shielded by qualified immunity."

Nonetheless, as noted above, the County Defendants further argue that, even if Plaintiffs' constitutional right were clearly established, the Deputy Defendants would be entitled to qualified immunity because they took action in reliance on duly enacted statutes. *See* County Mot. at 9–11. Although it is true that "an officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity," *Grossman*, 33 F.3d at 1209, it is also true that "an officer who unlawfully enforces an ordinance . . . in

---

[6] The County Defendants seem to suggest that they are entitled to qualified immunity because they were relying on the decision of their superior officers, and the City, that the assembly was unlawful. As the Ninth Circuit has cautioned, however, "individuals cannot always be held immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority," *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994), and "'following orders' will only insulate officers from liability when 'reliance is objectively reasonable.'" *Cal. Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039, 1049 (9th Cir. 1999), *as amended on denial of reh'g* (Jan. 8, 2000). Plaintiffs have alleged that the vigil was peaceful at all times and that the Deputy Defendants "could easily see and ascertain the peaceful nature of the vigil." *See, e.g.*, TAC ¶¶ 6, 10. Consequently, the Court cannot decide as a matter of law that the Deputy Defendants reasonably relied upon the orders of a supervisor or the City.

a manner which a reasonable officer would recognize exceeds the bounds of the ordinance[] will not be entitled to immunity." *Id.* at 1210 (citing *Chew v. Gates*, 27 F.3d 1432, 1449–50 (9th Cir. 1994). Consequently, the Deputy Defendants are not entitled to qualified immunity if, accepting Plaintiffs' allegations as true, a reasonable officer would have recognized that the arrests were unlawful under the statutes in question.

Because it is not clear from the face of the Third Amended Complaint whether the Deputy Defendants were acting pursuant to the California Emergency Services Act, *see supra* pages 28–29, 31, the Court cannot conclude at this stage in the litigation whether the Deputy Defendants reasonably relied upon those provisions, including California Government Code section 8618 or California Penal Code sections 409 or 726.[7] *See* County Mot. at 10. Accordingly, the Court **DENIES** the County Defendants' Motion with respect to qualified immunity for the Deputy Defendants.

## II. Second Cause of Action: Section 1983 (First Amendment)

The County Defendants argue that Plaintiffs' second cause of action against the Deputy Defendants must be dismissed because "there are no factual allegations in the TAC showing each of the individual Deputy Defendants intended to violate the rights of any – and certainly not all – of the 18 Plaintiffs." County Mot. at 11. According to the County Defendants, the only allegations against the Deputy Defendants related to their arrests of one of the Plaintiffs, which were made pursuant to California Penal Code section 409, and "[t]hese arrests do not show that each of the Deputy Defendants' underlying motivation or intent was to chill speech." *Id.* at 12. Further, "there are no allegations that any of the 10 Deputy Defendants arrested, or took any action whatsoever[,] against Plaintiffs Jamie

---

[7] The County Defendants argue that "the Deputy Defendants were required by California Penal Code § 726 to disperse the crowd" "once El Cajon gave the unlawful assembly declaration" because "El Cajon Police remained in charge of the incident pursuant to statute (Gov. Code § 8618)." County Mot. at 10. Further, "[t]hereafter, the Defendant Deputies enforced El Cajon's declaration by arresting the Plaintiffs pursuant to Penal Code § 409." *Id.* Because the applicability of California Penal Code sections 409 and 726 is predicated upon the applicability of the California Emergency Services Act, the Court concludes that resolution of this issue is also premature at this stage in the litigation.

Wilson, J.J.R., J.T.A.R., J.A.R., Carl Box, Tegan Daniels, Anthony Jimenez, or Andrew Paster[,] who also assert the Second Cause of Action against the Deputy Defendants." *Id.*

Plaintiffs respond that "[b]oth declaring an unlawful assembly without evidence and arresting protestors without probable cause squarely fall within the types of activity that would chill or silence a person of ordinary firmness," County Opp'n at 9–10 (citing *Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013); *Beek v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000)), and "[l]iability attaches when the individual deputies personally participated in the action." *Id.* at 10 (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004)). Plaintiffs concede that there are no allegations regarding any of the Deputy Defendants as to Ms. Wilson, J.J.R., J.T.A.R., J.A.R., Mr. Box, Ms. Daniels, Mr. Jimenez, or Mr. Paster, *see id.*, but argue that "[t]he pleadings make very clear who was arrested by whom and who was only dispersed by defendants, and when this occurred," *id.* at 11 (citing TAC ¶¶ 48–57), and claim that a request for a more definitive statement under Federal Rule of Civil Procedure 12(c) would be the County Defendants' proper remedy.

The Court concludes that Plaintiffs have adequately stated a claim for violation of their First Amendment rights against the Deputy Defendants. As the Court previously noted, ECF No. 36 at 11 (internal quotation marks omitted) (quoting *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alteration in original), "[w]hen a Plaintiff asserts a Section 1983 claim based on the First Amendment, a plaintiff must provide evidence showing that by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." The County Defendants appear to contest only the third of these elements.

This is the pleading stage; the hurdle is not as high as the County Defendants would have the Court believe. Here, Plaintiffs allege that, on October 1, 2016, "[w]hen Defendants issued the order to disperse, there was no valid legal basis for declaring the assembly to be unlawful" and "[t]he dispersal order was solely due to the inconvenience to

police officers of monitoring a peaceful vigil at midnight." TAC ¶ 93. Each relevant Plaintiff alleges that each Deputy Defendant arrested him or her without probable cause for failure to disperse while exercising his or her First Amendment rights. *See, e.g.*, TAC ¶¶ 26, 29–30, 32–33, 37–41, 48–57. "[P]laintiffs have alleged sufficient facts to infer that plaintiffs' association with the protest was a substantial or motivating factor for defendants' actions." *See Johnson v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 928723, at *5 (N.D. Cal. Mar. 11, 2016) (quoting *Save CCSF Coal. v. Lim*, No. 14-CV-05286-SI, 2015 WL 3409260, at *9 (N.D. Cal. May 27, 2015)). "Further, these allegations support a reasonable inference that if Plaintiffs had not been participating in the demonstration . . . they would not have been . . . arrested." *Id.* (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("It is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics."); *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 WL 891090, at *3 (N.D. Cal. Mar. 8, 2013) ("[I]t is reasonable to infer that had [plaintiff] not verbally challenged [the officers], they would not have arrested [plaintiff], shoved him, or fastened his handcuffs too tightly.")).

The Court therefore concludes that Plaintiffs have stated a claim for violation of their First Amendment rights by the Deputy Defendants. The Court also concludes that the Deputy Defendants have sufficient notice as to which Plaintiff is stating a claim against each of the Deputy Defendants. *See, e.g.*, TAC ¶¶ 26, 29–30, 32–33, 37–41, 48–57. Consequently, the Court **DENIES** the County Defendants' Motion as to Plaintiffs' second cause of action.

## III.    Seventh Cause of Action: *Monell* Claim

The County Defendants claim that Plaintiffs' seventh cause of action must be dismissed against the County as it relates to the Fourth Amendment because "[t]here are no factual allegations in the TAC showing that Sheriff Gore approved and encouraged a pattern and practice of excessive use of force and wrongful arrests of protestors." *See* County Mot. at 13. The Court must agree.

Plaintiffs allege that "Defendants CITY OF EL CAJON and Chief of Police JEFF DAVIS[] implemented an unconstitutional policy of arresting or threatening Plaintiffs and others with arrest for trespassing if they sought to visit the vigil site." TAC ¶ 182. Nonetheless, Plaintiffs claim that "[t]hese pattern and practices of conduct, which included the excessive force by officers and the wrongful arrests of protestors, were approved and encouraged by policy makers such as Sheriff WILLIAM GORE and El Cajon Chief of Police JEFF DAVIS." *Id.* ¶ 183. There are no allegations, however, that Sheriff Gore instituted policies implicating Plaintiffs' Fourth Amendment Rights. Accordingly, the Court **GRANTS** the County Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' seventh cause of action against the County to the extent it is predicated upon violation of Plaintiffs' Fourth Amendment Rights.

## IV. Claims Against Sheriff Gore

In its prior Order, the Court ordered Plaintiffs "to specify the capacity under which they are suing [Sheriff Gore] in further pleadings." ECF No. 66 at 5 n.3. Because Plaintiffs have failed to do so, the County Defendants request that the Court dismiss all claims against Sheriff Gore from the Third Amended Complaint. *See* County Mot. at 14. As with Plaintiffs' claims against Chief Davis, *see supra* page 12, the Court **GRANTS** the County Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims against Sheriff Gore.

## V. State Law Causes of Action

Like the City Defendants, the County Defendants advocate for the dismissal of Plaintiffs' eighth cause of action for violation of the Bane Act, ninth cause of action for false imprisonment, tenth cause of action for battery, and eleventh cause of action for intentional infliction of emotional distress. *See* County Mot. at 16–23. The County Defendants also contend that Plaintiffs are not entitled to recover attorneys' fees for their ninth, tenth, or eleventh causes of action. *See id.* at 23–24.

In their Opposition, Plaintiffs note that they "do no oppose dismissal of the tenth and eleventh causes of action <u>at this time</u>." County Opp'n at 20 (emphasis in original). The

Court therefore **GRANTS** the County Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' tenth and eleventh causes of action.

As for Plaintiffs' eighth and ninth causes of action, the Court concludes that the same reasoning applies to the County Defendants as to the City Defendants. *See supra* Sections IV.B, C. Accordingly, the Court **DENIES** the County Defendants' Motion as to Plaintiffs' eighth cause of action for violation of the Bane Act and ninth cause as it relates to Deputies Gibson, Price, and Cabrera.[8] The Court **GRANTS** the County Defendants' Motion as to Plaintiffs' ninth cause of action as to the County and **DISMISSES WITH PREJUDICE** any claim for direct liability against the County pursuant to Section 815(a) but **DISMISSES WITHOUT PREJUDICE** any claim for vicarious liability against the County pursuant to Section 815.2(a).

The Court also **DENIES** the County Defendants' request that the Court strike or dismiss Plaintiffs' request attorneys' fees pursuant to Section 1021.5 for Plaintiffs' ninth, tenth, and eleventh causes of action. *See supra* Section IV.E.

## CONCLUSION

Given the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss and **DISMISSES WITHOUT PREJUDICE**: (1) all of Plaintiffs' claims against Chief Davis and Sheriff Gore, (2) Plaintiffs' first cause of action for violation of their First Amendment rights, (3) Plaintiffs' sixth cause of action for declaratory relief, (4) Plaintiffs' seventh cause of action for municipal liability against the County as it relates to violation of Plaintiffs' Fourth Amendment rights, (5) Plaintiffs' ninth cause of action for false imprisonment against the County and the City to the extent it is

---

[8] The County Defendants do not appear to make any argument other than immunity under Section 8655 as to why Plaintiffs' ninth cause of action should be dismissed as to these individual Defendants, arguing only that *the County* cannot be liable because Plaintiffs have failed to specify a statutory basis for liability. *See* County Mot. at 19–20. The Court concluded that the Deputy Defendants cannot establish immunity under Section 8655 on the face of the Third Amended Complaint. *See supra* Section I.A. Consequently, as with Officer Robertson, *see supra* Section IV.C, the Court concludes that Plaintiffs' allegations are sufficient to state a cause of action against Deputies Gibson, Price, and Cabrera.

predicated on their vicarious liability, (6) Plaintiffs' tenth cause of action for battery, and (7) Plaintiffs' eleventh cause of action for intentional infliction of emotional distress. The Court also **DISMISSES WITH PREJUDICE** Plaintiffs' ninth cause of action for false imprisonment against the County and the City to the extent it is predicated on their direct liability. The Defendants' Motions are otherwise denied.

Plaintiffs **MAY FILE** a final amended complaint <u>on or before thirty (30) days of the date on which this Order is electronically docketed</u>. Because Plaintiffs have already filed four complaints, their Fourth Amended Complaint, should they choose to file one, will be their last absent extraordinary circumstances. Plaintiffs are therefore advised to read the above Order carefully should they choose to file an amended complaint, as ***<u>no further leave to amend will be granted absent extraordinary circumstances.</u>*** Should Plaintiffs fail timely to file an amended complaint, the dismissal of the above-enumerated causes of action will be with prejudice and this action will proceed on Plaintiffs' surviving causes of action.

**IT IS SO ORDERED.**

Dated: January 25, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge